VICTOR E. KALLBERG, Appellant, v. G. S. NEWBERRY, Respondent.

(170 N. W. 113.)

**Option land contract — action to rescind — decision adverse to plaintiff — subsequent action by plaintiff — on the option contract — for difference in price — between option price and sum realized — election of remedies — plaintiff bound by first suit.**

Plaintiff gave defendant a thirty-day option on certain land, at $25 per acre, and within the thirty days defendant found a purchaser, accepted the option, and the land was conveyed. A short time prior to the giving of the option, plaintiff had given defendant a similar option at the same price, which had expired, and had offered to sell the land to others at the same price. Subsequent to the conveyance by the plaintiff, a dispute arose relative to the transaction, and the plaintiff, with full knowledge of the surrounding facts, brought an action to rescind the option contract, claiming therein to be entitled to the full amount which defendant had obtained upon a resale of the property. The purchaser from the defendant was not made a party to the rescission suit, which terminated in favor of the defendant. *Held:*

1. That the termination of the recission suit adversely to the plaintiff bound him to his election of remedies, and he could not subsequently maintain an action upon the option contract for the recovery of the difference between the price stated in the option and the amount realized upon the resale.

**Res judicata — doctrine of — precludes repeated litigation — same parties — same issues — or issues properly involved in former suit.**

2. That the doctrine of *res judicata* precludes repeated litigation and prevents the relitigation of issues which were properly involved in a previous suit between the same parties.

Opinion filed December 21, 1917. Petition for rehearing filed April 12, 1918.

Appeal from District Court of Foster County, Honorable *J. A. Coffey,* Judge.

Affirmed.

*T. F. McCue,* for appellant.

"A mere attempt to claim a right or pursue a remedy to which a party is not entitled, and that without obtaining any legal satisfaction therefor, will not deprive him of a right or the benefit of a remedy to which he orginally had a right to claim or resort. The doctrine of election between inconsistent rights or remedies has no application to such a case." Bennet v. Lapp, 41 Minn. 494, 43 N. W. 334.

Where one brings a suit to recover what he has paid on the contract, based upon a rescission of the contract by him, and fails to recover because of no legal right to rescind, another suit for damages is maintainable. Where there exists but one remedy for a wrong, an election of remedies is an impossibility. Ibid., Detroit H. & L. Co. v. Stevens, 58 Pac. 195.

The remedy which one pursues in the belief that it exists in his favor must actually exist before he is estopped. 7 Am. & Eng. Enc. Pl. & Pr. p. 366; Elliott v. Collins (Idaho) 55 Pac. 302; Marshall v. Gilman (Minn.) 53 N. W. 811.

The former action was a mere empty suit, under which plaintiff derived no benefit; he was mistaken in his remedy. Such an empty proceeding will not constitute an election of remedies so as to bar a party from recovery in a proper action. Omaha v. Redick (Neb.) 84 N. W. 46; McLaughlin v. Austin (Mich.) 62 N. W. 719; Bistline v. United States, 144 C. C. A. 6, 229 Fed. 546; Pruett v. Edwards, 88 S. E. 36; McGibbon v. Schmidt (Cal.) 155 Pac. 460; Commercial Nat. Bank v. Faser, 155 N. W. 601; Corbett v. Boston Ry. C. 107 N. E. 60; Union Central Life v. Drake, 214 Fed. 536; Snow v. Allen (Mass.) 30 N. E. 691; Sullivan v. Rose (Mich.) 76 N. W. 309; Chaddoch v. Tabor (Mich.) 72 N. W. 1093; Shanahan v. Corburn, 87 N. W. 1038; Smith v. Bricker, 86 Iowa, 285, 53 N. W. 250.

In order for the doctrine of the election of remedies to bar an action, the party must have received some benefit under the election. Register v. Carmichael, 169 Ala. 588, 34 L.R.A.(N.S.) 309 and cases cited; Todd v. International Mtg. & Bond Co. 71 So. 661; Fitzgerald v. Fer. Trust Co. 187 S. W. 600; Whitley v. Spokane Ry. Co. 132 Pac. 121; Molher v. Chamber of Commerce, 153 N. W. 617; Kaufman v. Cooper,

39 Mont. 146, 101 Pac. 969; Wilson v. Edwards, 113 N. Y. Supp. 687; Calhoun County v. Met. Constr. Co. 152 Ala. 607; Belt v. Washington Power Co. (Wash.) 64 Pac. 523.

"A party who imagines he has two or more remedies, or who misconceives his rights, is not to be barred from all remedy because he first tries a wrong one. Justice should not be wholly denied because a wrong remedy was first pursued." Bunch v. Graves, 111 Ind. 357, 12 N. E. 514; Agar v. Winslow (Cal.) 56 Pac. 422.

In order that a judgment will constitute an estoppel, the issue must be necessarily tried and determined in the former action. Carter v. Carter, 14 N. D. 66, 103 N. W. 425.

And the subject-matter and demand must be the same. Selbie v. Graham, 18 S. D. 365, 100 N. W. 755; Mosteler v. Holborn, 21 S. D. 547, 114 N. W. 693; Cromwell v. Sac County, 94 U. S. 351, 24 L. ed. 195; Gehering v. School Dist. (Neb.) 107 N. W. 250; Woodman v. Blue Grass Land Co. (Minn.) 107 N. W. 1052; Coyle v. Due, 28 N. D. 406; Stitt v. Rat Portage Co. 101 Minn. 93, 11 N. W. 948.

Where it is pleaded and proved that a written contract is signed only upon the faith placed by said party in certain oral promises made by the other party at the same time and prior to the signing of the written contract, and in the full belief that such oral promises constituted a part of their entire contract, and that the party making them would carry them out, evidence of such oral promises is highly competent and should be received. Erickson v. Wiper, 33 N. D. 193; De Rue v. McIntosh, 26 S. D. 42, 127 N. W. 532; Chapin v. Dobson, 78 N. Y. 74, 34 Am. Rep. 512; Thomas v. Loose, 114 Pa. 35, 6 Atl. 326; Dicken v. Morgan, 54 Iowa, 684, 7 N. W. 145; Cullman v. Lindsay, 114 Pa. 166, 6 Atl. 332; Barnett v. Pratt, 37 Neb. 352, 55 N. W. 1050; Ayer v. Bell Mfg. Co. 147 Mass. 46, 16 N. E. 754; Davison v. Cochran, 71 Iowa, 369, 32 N. W. 445; 9 Enc. Ev. 350; Ferguson v. Raferty, 128 Pa. 337, 6 L.R.A. 33, 18 Atl. 484; Hines v. Wilcox, 96 Tenn. 148, 34 L.R.A. 824, 54 Am. St. Rep. 826, 33 S. W. 914; Walker v. France, 112 Pa. 203, 5 Atl. 208; Bourne v. Sherill, 143 N. C. 381, 118 Am. St. Rep. 809, 55 S. E. 799; Brown v. Hobbs, 147 N. C. 73, 60 S. E. 716; Devlin, Deeds, 3d ed. § 826; Mapes v. Metcalf, 10 N. D. 609.

When the consideration of a written contract is the material sub-

ject of inquiry, parol evidence is always admissible. Winsor v. St. Paul M. & M. R. Co. (Wash.) 79 Pac. 613.

Before a party is entitled to a judgment notwithstanding the verdict, it must appear clearly, upon the whole record, that he is entitled to a judgment on the merits of the case, as a matter of law. First Nat. Bank v. Kelly, 30 N. D. 98; Cruikshank v. St. P. F. & M. Ins. Co. 75 Minn. 266, 7 N. W. 958; Marquardt v. Hubner, 77 Minn. 442, 80 N. W. 617.

*Edward P. Kelly,* for respondent:

"No suitor is allowed to invoke the aid of the courts upon contradictory principles of redress, upon one and the same line of facts. The whole doctrine of election of remedies is based upon the theory that there are inconsistent rights and remedies of which a party may avail himself, and the choice of one is held to be an election not to pursue the other. The principle does not apply to coexisting and consistent remedies." Standard Sewing Machine Co. v. Owings, 140 N. C. 503, 53 S. E. 345, 8 L.R.A.(N.S.) 582; Whittier v. Collins, 15 R. I. 90, Am. St. Rep. 879; Bacon v. Moody, 117 Ga. 207, 43 S. E. 482; Austin Mfg. Co. v. Dexter, 109 Iowa, 277, 80 N. W. 312; Black v. Miller, 75 Mich. 323, 42 N. W. 837; Sonnesyn v. Akin, 14 N. D. 248; Dennies v. New Pub. Co. (N. D.) 129 N. W. 93; Poirer Mfg. Co. v. Kitts, 18 N. D. 556, 120 N. W..558; Cobb v. Hatfield, 46 N. Y. 536; Schiffer v. Ditze, 83 N. Y. 308; Maron v. Bovet, 43 Am. Dec. 651; Humpner v. Osborne Co. (S. D.) 50 N. W. 88; Sullivan v. Ross Estate, (Mich.) 71 N. W. 634; Farwell v. Myers, 26 N. W. 328; Roberts v. Ely, 9 N. Y. S. R. 796; Stewart v. Huntingdon, 16 N. Y. Supp. 112; Brown v. Ball, 29 N. D. 223; Zimmerman v. Robinson & Co. (Iowa), 102 N. W. 814.

The judgment in a prior action bears as an estoppel only as to matters in issue or controverted upon the determination of which the findings or verdict was rendered, where the second action between the parties is upon a different claim or demand. A former judgment is a bar not only as to every matter which is offered to sustain the verdict or claim or demand, but as to any other admissible matter which might have been offered for that purpose. Selby v. Graham, 18 S. D. 365, 100 N. W. 755, 24 Am. & Eng. Enc. Law p. 779.

"The execution of a contract in writing, whether the law requires

it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." Comp. Laws 1913, § 5889.

"Parol testimony cannot be introduced to vary, add to, or alter a written instrument which in itself is plain and free from doubt, in the absence of fraud, surprise, or mistake." Durkin v. Cobleight (Mass.) 17 L.R.A. 270 and note; N. W. Fuel Co. v. Brunz, 1 N. D. 137.

"The testimony was evidenced by a writing; to permit some supposed agreement to be proven by parol would be to vary, contradict, and annul the written agreement by a parol contemporaneous arrangement. This the law will not tolerate." National German Am. Bank v. Lang, 2 N. D. 11; Thompson v. McKee, 5 N. D. 196, 37 N. W. 367; Plano Mfg. v. Rott, 3 N. D. 165; Hutchinson v. Clary, 3 N. D. 270; Wm. Deering & Co. v. Russell, 5 N. D. 319.

The agreement here sought to be proved by parol was in no manner a collateral matter distinct from the subject-matter of the written contract, but directly connected therewith. First Nat. Bank v. Prior, 10 N..D. 146; Jones & Son v. G. N. R. Co. 12 N. D. 336; Merchants State Bank v. Ruetell, 12 N. D. 519.

If the contrary principle were established no written contract could be made that could not be defeated by parol. Mukland v. Menasha Wooden Ware Co. 68 Wis. 34; Reeves v. Bruening, 13 N. D. 157; Dowagiac Mfg. Co. v. Mahon & Robinson, 13 N. D. 516; Alsterberg v. Bennett, 14 N. D. 596; Putnam v. Prouty, 24 N. D. 517.

BIRDZELL, J. This is an appeal from an order entered in the district court of Foster county, setting aside the verdict of a jury in favor of the plaintiff for $1,440, and directing the entry of a judgment *non obstante*-for the defendant. The facts are as follows: Plaintiff Kallberg, being indebted to the First National Bank of Carrington, of which the defendant Newberry was cashier, and there being liens outstanding upon his land in considerable amount, was apparently desirous of disposing of his property and paying his debts. The bank was also apparently desirous of collecting the amount owing to it by Kallberg. In carrying out this purpose, Kallberg, in the fall of 1914, talked with the defendant concerning the proposed sale of his land, and on October 20th gave Newberry a fifteen-day option upon

the land at $25 per acre. During the life of this option, some pros-
pective deals were discussed and investigated by the plaintiff and
defendant, but inasmuch as they involved trades which, for one reason
or another, were regarded as undesirable, the sale was not consum-
mated. During this same year, Kallberg had listed his land with at
least two real estate men in Carrington at $25 per acre. He had also
offered it for sale to one Herman at the same price. On November
19th, Kallberg gave to the defendant a second option for thirty days,
on the terms of $25 per acre. The stated consideration for each of
these options was "$1, receipt of which is hereby acknowledged."
While there is some conflict in the testimony relative to the understand-
ing of the parties at the time the second option was given, it is not
disputed that on the morning of the day the option was signed, New-
berry, in company with one A. T. Johnson and a prospective pur-
chaser by the name of Ganske, and the wife of the latter, went to the
Kallberg farm for the purpose of inspecting it with a view to the pur-
chase thereof by Ganske. It appears that Johnson was interested in
the matter by reason of the fact that he held a lumberman's lien against
the land, amounting to about $900, which had been assigned by him as
collateral to his indebtedness to the First National Bank. Further-
more, it appears that Johnson had found the prospective purchaser,
having learned from one Nolton, with whom the Ganskes were stop-
ping in Carrington, that they were desirous of purchasing land in the
locality. Newberry's explanation of the reason why he desired the
option is that Johnson also had other land which he could show to
these people, but that, inasmuch as he, Newberry, was desirous of
selling this land for Kallberg, he would like Kallberg to execute the
option, so that he, Newberry, would be protected in making the deal.
While there is a conflict between the testimony of Newberry and Kall-
berg regarding the conversation at the time of the signing of the
option, the former contending that it was understood that the option
was a straight proposal to sell the land at $25 per acre, and the latter
contending that it was intended that he should have all of the money
realized from the sale, over and above his indebtedness, in the view
that we take of the case this conflict is immaterial, as will later appear.
The deal was later consummated, the land being sold to Ganske at
$29.50 per acre. A few days after the option was given, Kallberg gave

Newberry a deed for the land, and Newberry entered into contract with Ganske and wife, whereby the latter was to make his first substantial payment on March 15, 1915, following, it being understood that Kallberg was to retain possession of the land until that date. A few days prior to March 15, 1915, while Kallberg was making preparations to conduct a sale of his personal property, preparatory to giving up the possession of the premises, a question arose relative to some indebtedness owing by Kallberg to the First National Bank, as security for which the bank held a chattel mortgage on some property which Kallberg desired to sell. The merits of the controversy respecting this chattel indebtedness are not involved in this action, and are unimportant here, except as this transaction furnished the occasion for the discussion between the parties relative to the interest upon the purchase price during the interim between the date of the sale of the land and the date of the settlement, the following March. During this controversy the whole deal was rehashed, and the parties, through their respective agents, attempted to negotiate a settlement of the entire matter in dispute. For some reason the settlement failed, and Kallberg instituted a suit for the rescission of the sale contract and the cancelation of the deed. This suit was later terminated by the entry of a judgment for the dismissal of the action. It should be stated here that, after the termination of the rescission suit, the defendant settled with Johnson for his and Nolton's participation in the deal. This action was then brought for the purpose of recovering the difference between the price recited in the option of November 19th, or $25 per acre, and the price at which the land was sold to Ganske, namely, $29.50 per acre, which difference amounted to the sum of $1,440. The complaint is founded upon an alleged agreement, whereby the defendants obligated themselves to pay or account to the plaintiff for whatever sum was received for the land in excess of $25 per acre.

Upon this appeal the appellant asks for a reversal of the order of the trial court and the entry of a judgment on the verdict of the jury. In support of his position appellant contends: First; that the bringing of the rescission suit was not an election of remedies; second, that under the doctrine of *res judicata* he is not precluded from pursuing this action; and, third, that the evidence going to establish the oral

agreement as to additional consideration was admissible and afforded sufficient foundation for the verdict of the jury.

It is clear that this suit is founded upon an alleged contract between plaintiff and defendant, whereby the defendant became bound to pay to the plaintiff not $25 per acre for the land, according to the option, but whatever sum defendant received therefor in making the resale of the premises. It is equally clear that in the rescission suit the plaintiff sought relief upon the ground that the contract between him and defendant was not binding, and that the relief asked was founded upon a disaffirmance of the contract. These remedies, as applied to the transaction of the parties, are therefore clearly inconsistent. The appellant does not contend that at the time he instituted the rescission suit he was not fully apprised of the facts surrounding the transaction in question. It appears, however, on the contrary, that, with full knowledge of the facts, the plaintiff instituted the rescission suit, in which he would have been entitled either to a return of the property, or, in case the property could not be returned, to its value. In so doing he must be held to have elected his remedy.

The elements of an election are: First, the existence of two or more concurrent remedies; second, the inconsistency of the remedies; and third, a decisive choice between them. 15 Cyc. 252; 9 R.C.L. 958. An examination of the record in this case shows conclusively that all of the elements of a binding election are present. The judgment roll, which is in evidence, shows that the plaintiff claimed, in the former suit, that the defendant induced him to enter into the transaction for the purpose of reaping a profit measured by the difference between $25 per acre and the price at which the land was sold, while professing that he "was not getting anything personally out of the deal." It is true that the complaint in the former action was drawn on the theory that the option contract bound Kallberg to sell the land at $25 per acre, but that such contract was voidable by reason of Newberry's alleged fraud and breach of a confidential relationship; whereas in this case the contention is that the real contract was that Kallberg should be bound to sell the land for not less than $25 per acre, and should receive, in addition to that, whatever sum Newberry would be able to obtain upon a resale. On either theory of the plaintiff's right, however, that is, whether it be a right to have the contract rescinded and

the deed canceled (or in lieu thereof money damages), or a right to have the alleged contract enforced, the substantial thing the plaintiff sought to recover in both actions was the same. He knew of the transfer to Ganske when the rescission suit was brought, and did not make him a party. The real object of that suit was the same as in this; namely, to recover the difference between $25 per acre and a higher valuation of the property which defendant would be precluded from disputing. While the prayer for relief in the rescission suit asked for a cancelation of the deed and for general relief, it is clear that a money decree would have been within the issue; and, when it was demonstrated that a cancelation could not be had by reason of a transfer of the land to persons who were not parties to the action, no relief, other than a money judgment, would have been appropriate.

Nor does the fact that the plaintiff now claims that the true contract was different from that expressed in the option agreement alter the situation. A plaintiff who is apprised of all of the facts connected with his transaction cannot, for the purpose of maintaining a rescission suit, claim that the transaction had resulted in the consummation of one contract, and then subsequently, for the purpose of maintaining an action for breach of the contract, maintain that the contract was entirely different. Especially is this true where the pursuit of either remedy to its conclusion would result in substantially the same measure of recovery. We are of the opinion that the bringing of the former action and its prosecution to final judgment amounted to a conclusive election. See Sonnesyn v. Akin, 14 N. D. 248, 104 N. W. 1026; Cohoon v. Fisher, 146 Ind. 583, 36 L.R.A. 193, 44 N. E. 664, 45 N. E. 787; Board of Education v. Day, 128 Ga. 156, 57 S. E. 359; Wheeler v. Dunn, 13 Colo. 428, 22 Pac. 827; Sanger v. Wood, 3 Johns. Ch. 416.

The appellant further contends that he is not precluded by the doctrine of *res judicata*. What has already been said, in referring to the judgment roll in the previous action, demonstrates the unsoundness of this contention. The doctrine of *res judicata* is founded upon the principle that litigation must not be so conducted as to be needlessly vexatious. It is not designed to preclude a thorough judicial injury into the rights of litigants which arise out of a given set of circumstances, but it must be and is properly employed to prevent litigants

from harassing their adversaries by compelling them to repeatedly litigate matters which have previously been at issue between them, or which, if not subjected to judicial scrutiny, were properly involved in the previous litigation. The court, in the previous action, having fully examined the option transaction and having determined therein that the plaintiff had in fact no equity in the land litigated the very matters now at issue. Such determination is conclusive upon the plaintiff in this action, where he asks to reverse this holding and to have it determined that he has an equity, as against this defendant amounting to $1,440.

As to the admissibility of parol testimony to impeach the consideration recited in the option contract and to establish the true consideration existing between the parties, we feel that it is unnecessary to express any opinion, for it is quite apparent from what has been said that the appellant is precluded from maintaining this action. We are impressed that there would be much merit in appellant's argument if the action were one to rescind, cancel, or reform the contract. Erickson v. Wiper, 33 N. D. 193, 157 N. W. 592. And it may even have some merit as applied to the present case; but, inasmuch as the decision of this question cannot affect the result, we prefer to express no opinion upon it.

For the foregoing reasons the order appealed from is affirmed.

Robinson, J. (dissenting). In this case the plaintiff seems to have been in the distress of Esau when he sold his birthright for a mess of pottage. By taking advantage of his necessity and distress, Cashier Newberry obtained his signature to a paper consenting to the sale of his land at $25 an acre. The next day he obtained a deed of the land, and the next day, November 21, 1914, Newberry sold the land to one Ganske at $29.50 per acre. In the course of time he allowed the plaintiff $8,000 or $25 an acre. The claim of plaintiff is that Newberry was his creditor and banker and confidential adviser; that the deed to him was made in trust, relying on his promise to sell the land and to pay to the plaintiff the entire purchase price, less the liens and mortgages. The jury found a verdict in favor of the plaintiff for $1,440, the balance due on his land at $29.50 an acre. Contrary to the verdict the court gave judgment for defendant, and plaintiff ap-

peals. The verdict is well sustained by the positive evidence and by the facts and circumstances. The plaintiff was largely indebted to Newberry, or his bank, on 12 per cent paper, and the cashier was pressing him for payment. Plaintiff testifies: "In the early morning, when he was milking, Banker Newberry came in his auto and went to the barn and said that he had a buyer for the land. He had a piece of paper and wanted me to sign it. I said, 'twenty-five dollars an acre is too cheap.' He said, 'Whatever the land sells for after paying the debts will be turned over to you.' I signed it. Next Saturday I saw Banker Newberry at the bank, and he told me he wanted the deed to the land. I asked him the price. He would not tell me. I signed the deed and left it with him. He gave me no papers. In January he said he would not settle until Ganske settled up. He said he would not do anything before the 15th day of March, when Ganske was to pay up. After March 15th, I had McCue go to the bank to get a settlement. I got no settlement. Newberry never paid me one penny."

The testimony of the plaintiff is well supported by the facts and circumstances. If the deed to Newberry had been an absolute sale at $25 an acre, the proper thing for him was to have made a settlement with plaintiff at the time of receiving the deed. That was the time for him to settle and to turn over to plaintiff his 12 per cent paper, release the mortgages, and pay to him the balance. That is just what Newberry or any honest banker would have done had he bought the land at $25 an acre. The jury believed, and had a right to believe, the testimony of the plaintiff in regard to the price of the land, and the court had no right to order judgment contrary to the verdict.

In March, 1915, the plaintiff commenced an ill-advised action against Newberry to annul and cancel the deed, and to rescind the deal with Newberry. The complaint stated facts to show that for a long time Newberry had been the banker and adviser of the plaintiff, and held a large amount of securities against him; that plaintiff had reposed confidence in Newberry; that the deed was obtained by undue influence and by taking a grossly unfair advantage of the plaintiff's necessity and distress.

However the rescission suit was a mere blunder. In any view of the case the deed to Newberry gave him an absolute power to sell the

land and to account for the proceeds, and under that power he had sold the land for $29.50 an acre, Ganske, the purchaser, was not made a party to the suit, and for that reason the court justly held that it had no jurisdiction over Ganske or his contract, and dismissed the action.

Then this action was commenced to recover $1,440, the balance of the purchase price, and the jury found in favor of the plaintiff. But counsel for Newberry contends that, by the false action to rescind the contract and cancel the deed, the plaintiff waived the right to an action to recover the purchase price of the land. And strange to say that view appeals to our judges. They say: "This action is brought for the purpose of recovering the difference between the price recited in the option of November 19th, of $25 an acre, and the price at which the land was sold to Ganske, namely, $29.50 an acre, which difference amounts to $1,440. The complaint is founded upon an alleged agreement of defendant to pay or account to the plaintiff for whatever sum was received for the land in excess of $25 an acre. Appellant contends that the bringing of the rescission suit was not an election of remedies, and that it does not preclude him from bringing this action." Then the judges hold that the action for rescission of the contract is a bar to this action. Under such a ruling if the plaintiff had not received a dollar for his land, a suit to rescind his deed would bar him from ever recovering the price. To me that seems perfectly absurd. Indeed it seems a shame to accuse our judges of making such a decision.

When an action to rescind a sale is dismissed, it is dead and buried, and it can serve no purpose except to bar another action for the same identical cause. There is no rule or principle of law that a vendor of land may forfeit the price of the same, or any part of the price, by a false action or an attempt to rescind the sale. An action to rescind a sale is an action in equity, and is triable by the court or judge; and an action to recover the price of land is an action to recover money only, and it is triable by a jury. The one is not a bar to the other. In this case it was not permissible to unite the two causes of action because they did not affect all the necessary parties to the action. While Ganske was a necessary party to one cause of action, he was no party to the other cause.

Both of the actions in question were commenced and prosecuted by McCue, the ex-attorney general. He holds a certificate from this

court that he may safely be trusted to practise law. Now, if McCue was so unwise as to forfeit $1,440 of his client's money by prosecuting an action to rescind a sale, someone should make good the loss. If the judges gave McCue a false certificate, it is for them to make it good by paying the money, or directing McCue to pay it or to show cause why he should not be disbarred for incompetency. McCue neglected to argue this case. He was too confident. Now his duty is to move for the rehearing, and to set himself and the judges right or to pay the $1,440.

## On Petition for Rehearing.

BIRDZELL, J. In a petition for rehearing, counsel for appellant contends that the legal doctrines relating to election and *res judicata* have been erroneously applied, and an apparently logical argument has been adduced to the effect that it is impossible that both doctrines could be conclusive against the appellant in the same action. The basic premise of the petition is that, in order that there may be a binding election, the party must be entitled to two different remedies; that they must be inconsistent; and that there must have been an unequivocal choice; whereas, in order to be precluded by the doctrine of *res judicata,* it is stated that the following requisites must exist: "(1) That there is a complete, actual identity between the things sued for in each action; (2) that the two causes of action must not only be consistent one with the other, but identical, a logical impossibility; and (3) that the parties to both actions must be the same." The statement quoted is a paraphrase of the statement contained in Bouvier's Law Dictionary and quoted in 34 Cyc. 1666, note 56. See also Freeman, Judgm. § 252. The second requisite, however, according to the above authorities, is not that the two causes of action must be consistent, but that there must be an *identity* of the *cause of action* involved in the previous proceeding and that involved in the present proceeding. The term is singular, not plural, as used by counsel. The doctrine of *res judicata* is not, except in unusual cases such as merger, employed for the purpose of preventing the separate litigation of separate and distinct causes of action. It is a well-established rule, however, that questions of fact which have actually been directly in issue in a former suit and

have been judicially determined by a court of competent jurisdiction are conclusively settled so far as concerns the parties to that action, and cannot be litigated again between such parties or their privies in the same or a *different* cause of action.    23 Cyc. 1215 and authorities cited.

Let us apply this principle to the instant case.    The parties are the same; in the former suit there was an issue as to the terms of the contract; and the findings, which are in evidence in this case, establish that the issue was determined adversely to the present contention of the appellant; for the court found "that at the time of the giving to the defendant the option (exhibit 2) it was his (plaintiff's and appellant's) intention and purpose to sell said land, if said option was accepted, at the agreed price of twenty five dollars ($25) per acre, and that on the 21st day of November, 1914, when he executed and delivered the warranty deed (plaintiff's exhibit A), it was his intention and purpose to transfer and convey the title therein described to the defendant, and at the agreed price of $25 per acre, or $8,000." It was also found that the plaintiff knew that Newberry was negotiating a sale of the premises at a higher price.    It is too clear for argument that the issues of fact relative to the contract between Newberry and Kallberg were proper subjects of litigation in the former action, that they were litigated therein, and that the parties are concluded by such former adjudication. *Nemo bis vexari debet pro eadem causa.*

Is there any inconsistency in the holding that the appellant is precluded both by the doctrine of *res judicata* and the doctrine of election? We think not.    *Res judicata* has to do with the cause of action or with some fact or issue involved in some former proceeding between the same parties, and operates to preclude its redetermination in a subsequent suit, even though the subsequent suit may be upon a different cause of action: whereas, the doctrine of election has to do with the legal means of enforcing a right arising out of a given transaction or set of facts; or, to attempt to state the doctrine more accurately, it involves nothing more or less than a choice of inconsistent rights arising out of the given transaction, together with the selection of the appropriate remedy, the latter being merely incidental.    Thus, it may be both logically consistent and perfectly conformable to the rationale of both doctrines referred to that a suitor may be precluded from liti-

gating certain questions of fact by reason of having previously litigated them with his adversary, and also prevented from maintaining a subsequent action by reason of the reliance of his adversary upon his unequivocal choice to litigate the matters arising out of the transaction in a former proceeding, which was appropriate to give him adequate relief.

So far as the doctrine of election itself is concerned, we are convinced that hard and fast rules cannot be laid down for its application without danger of being compelled to so apply them as to result in injustice in particular cases. The real basis for a binding election is estoppel; and if the election is held binding or not binding, depending upon whether or not the elements of an estoppel are present, no injustice can result. In the present case the appellant first sought to avail himself of his right to rescind, and in the action brought litigated every issue that is material to the maintenance of his present action. His adversary not only relied upon his choice to the extent of meeting the issues presented; but, after the determination of the case, he dealt with others on the strength of the result. We are convinced that under the facts stated in the main opinion, and repeated here, the appellant should be and is estopped to maintain the action at bar. If the contract, as found in the previous suit to be, had not been performed and this action were brought for its breach, a different question would be presented.

Many authorities are cited by appellant's counsel, in which the doctrine of election had been unsuccessfully invoked; but a careful examination of them discloses that the doctrine was generally held not applicable, and consequently not efficacious to defeat a second suit, where the plaintiff had previously chosen a wholly inappropriate remedy and where he was defeated by reason of such choice. It appears here that the parties litigated their cause in full in the previous rescission suit, and that the court made findings on the merits against the plaintiff. Thus, it becomes a matter of little or no consequence that relief by way of rescission would have had to be denied for the additional reason that Ganske, the purchaser of the land, was not made a party.

In addition to what has already been said in regard to the election of remedies, it would seem that a proper observance of the Code of Civil Procedure would require that a plaintiff in a civil action, brought

for the redress of a particular wrong, should be compelled to obtain his redress in that action, especially where it would be unnecessary for him to amend his pleadings. It must be remembered that the prayer for relief is not an essential part of a pleading, and that the plaintiff herein could have obtained all the relief he now seeks under the original pleadings.

The petition for a rehearing is denied.