FRANCISCO JAVIER MORALES, Plaintiff and Appellant, v. MANUEL ABELARDO MARTÍNEZ ET UX., Defendants and Appellees.

No. 5220. Argued February 10, 1930.—Decided March 21, 1930.

*E. H. F. Dottin,* for appellant.   *E. Martínez Rivera,* for appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

On October 4, 1929, Francisco Javier Morales commenced an action of unlawful detainer, on the ground of non-payment of rent.   On November 1 defendants deposited $200 to cover the October installment of rent.   On December 1 defendants deposited in like manner $200 for the month of November. On December 19 the district court rendered judgment for plaintiff.   On December 23 defendants filed a motion for reconsideration, and a notice of appeal.   On January 7, 1930, defendants deposited another $200 to cover the December installment of rent.   On the same day the court set aside the judgment for plaintiff, and dismissed the action.

Defendants now move to dismiss an appeal taken by plaintiff from the judgment of dismissal.   The first ground of the motion raises questions of waiver, of election, and of estoppel.

On January 16 plaintiff moved for and obtained a delivery of the $600 deposited by defendants.   The motion recites: That on December 19 the court rendered judgment for plaintiff;   that defendants appealed and placed at plaintiff's disposal in the clerk's office the sum of $600, the amount of the October, November and December installments;   that on January 7, the court set aside its judgment and dismissed the

action; and that on January 9 plaintiff appealed. The prayer for delivery of the money is prefaced by an intimation that plaintiff would not be understood as waiving any of his rights in connection with the said appeal.

Section 11 of the Unlawful Detainer Act provides that an appeal must be taken within five days from the date of the judgment. Section 12 reads in part as follows:

"Whenever the action of unlawful detainer is founded upon the nonpayment of the amounts agreed upon, the defendant shall be denied the right of appeal unless he deposits in the office of the secretary of the court the amount due as the price up to the date of the judgment. . . . . Both the deposit and the undertaking referred to in this section shall be made or filed within the time granted for taking an appeal."

If the third deposit had been made within the time allowed for perfecting an appeal, it would be a fair inference perhaps that defendants intended that deposit, together with the two already made, to serve as the deposit required by section 12, *supra*. That, however, is not the case. The third deposit was not made within the statutory period of five days, but some two weeks after the filing of the notice of appeal. It was made on the same day that the district judge vacated the judgment for plaintiff. Whether it was made before or after the setting aside of that judgment does not appear. The motion or other writing which accompanied the making of that deposit is not before us. Aside from the insinuation implied in plaintiff's request for delivery of the six hundred dollars, there is nothing to show that the third deposit was not made like the two which preceded it, as rent due under an existing contract of lease. The order whereby plaintiff obtained possession of the money directs the delivery of "the Six Hundred Dollars ($600) which the defendants have deposited in this court in favor of the plaintiff as payment of the rent on the property in controversy which should have been paid October 31, November 30 and December 31, 1929."

Our law of unlawful detainer does not require a deposit

of money by the defendant for any purpose during the course of the proceeding and prior to the entry of judgment, nor thereafter except in connection with the taking of an appeal by defendant from an adverse judgment and in connection with the subsequent prosecution of that appeal. Sections 1140 and 1144 of the Civil Code, however, read in part as follows:

"Sec. 1140.—A person having several debts of the same kind in favor of a single creditor may declare, at the time of making a payment, to which of them it is to be applied. . . . .

"Sec. 1144. If the creditor to whom the tender of payment has been made should refuse to accept it, without reason, the debtor shall remain released from all liability by the consignation of the thing due."

Plaintiff alleged default in payment of the installments of rent due on August 31 and September 30. Defendants denied this averment. In rendering judgment for plaintiff the court found that the rent for August and September had been paid on October 5, after default as to the August installment. This judgment was vacated on the ground that plaintiff had accepted the September rent, after default in payment of the August installment. The writing which accompanied the deposit of the rent for October recites that plaintiff had refused to receive the same when tendered on October 31. The writing which accompanied the deposit of the November rent contains a similar recital as to tender and refusal on November 30.

In 16 R.C.L. page 1132, section 653, it is said:

"The most familiar instance of the waiver of the forfeiture of a lease arises from the acceptance of rent by the landlord after condition broken, and it is a universal rule that if the landlord accepts rent from his tenant after full notice or knowledge of a breach of a covenant or condition in his lease for which a forfeiture might have been demanded, this constitutes a waiver of forfeiture which cannot afterward be asserted for that particular breach or any other breach which occurred prior to the acceptance of the rent. In other words, the acceptance by a landlord of the rents, with full knowledge

of a breach in the conditions of the lease, and of all the circumstances, is an affirmation by him that the contract of lease is still in force, and he is thereby estopped from setting up a breach in any of the conditions of the lease, and demanding a forfeiture thereof."

When plaintiff on October 31 and on November 30 refused to accept the rent for October and November, he must have understood that an acceptance would prejudice his right to evict defendants. When, after this refusal, defendants deposited the respective amounts of these two installments in accordance with sections 1144, *et seq.*, of the Civil Code, they plainly indicated their intention that if plaintiff should accept the money so deposited, he would receive it as rent due under the lease, not as compensation for use and occupation. When plaintiff accepted the money so deposited, he received it as rent. He could not avoid the effect of such an acceptance by protesting that he would not be understood as waivering his right of appeal. The legal consequences which flow from his acceptance of the rent as such are determined by what he did, not by what he said. *Shirley's Leading Cases*, 104; *Kenny* v. *Sen Si Lun*, 112 N. W. 220, and cases cited; *Hartell* v. *Blackler*, 10 British Ruling Cases, 478, and cases cited.

We have not overlooked the fact that in the instant case the rent was received after the commencement of the action of unlawful detainer. Appellant has not raised any question as to this aspect of the case and we shall not attempt, without the aid of counsel, to develop the subject at this time. One line of decisions may be traced in 18 American and English Encyclopedia of Law, (second edition) 387 par. (c), in 35 C. J. page 1083, par. 258, and in the note to *Hartell* v. *Blackler, supra,* subtitle "Waiver of Cause of Forfeiture", subdivision (c), 495. On the other hand, see *Dendy* v. *Nicholl*, 140 English Rep. (Reprint) 1130; *Gomber* v. *Hackett*, 70 Am. Dec. 467; *Guptill* v. *Macon Stone Supply Co.*, 79 S. E. 854; *Jones* v. *Dellamaria*, 48 Cal. App. 172; *Rich* v. *Rose*, 99 S. W. 953, and 16 R.C.L. page 1132, section 653, where we are told

that "it is generally held that even though the lessor has instituted proceedings to enforce the forfeiture and recover possession of the premises, his acceptance of rents accruing subsequently to the forfeiture is a waiver of the right to enforce it".

The doctrine of election is an application of the law of estoppel. 20 C. J. page 4, par. 2, note 10, and cases cited. In *Kallberg* v. *Newberry*, 170 N. W. 113, 117, the Supreme Court of North Dakota said:

"So far as the doctrine of election, itself, is concerned, we are convinced that hard and fast rules cannot be laid down for its application without danger of being compelled to so apply them as to result in injustice in particular cases. The real basis for a binding election is estopped, and if the election is held binding or not binding, depending upon whether or not the elements of an estoppel are present, no injustice can result."

When in another action the landlord asserts the continued existence of the lease, and the adverse party sets up as an estoppel the previous commencement by the landlord of an action of unlawful detainer, it is well enough to say that the election so made by the landlord is final. When, however, the lessee, as defendant in an action of unlawful detainer, pleads the acceptance of such rent as an estoppel, it becomes debatable whether the lessor should be heard to say in reply to and in avoidance of the estoppel so pleaded that his own previous election is irrevocable.

There may be some satisfactory reason why the commencement of an action of unlawful detainer is more binding on the landlord, as an unequivocal act indicative of his intention to terminate the tenancy, than a formal notice to quit when given in a proper case. Otherwise the clear reasoning of the English Divisional Court in *Hartell* v. *Blackler, supra,* may be regarded as applicable to the facts in the instant case.

See also *Doe* v. *Batten,* 98 English Reports (Reprint)

106; *Goodright* v. *Cordwent,* 101 English Reports (Reprint) 520; *Dorrell* v. *Johnson,* 34 Mass. Rep. 263; and *Collings* v. *Canty,* 60 Mass. Rep. 415.

As far as we know, the question now under consideration has not been discussed by the commentators on the Spanish Civil Code, and we do not find any decision by the Supreme Court of Spain which is directly in point.

In *Enriquez* v. *Watson & Co.,* 1 Phil. Rep. 44, the Supreme Court of the Philippines held as stated in the syllabus, that:

"Where the successive administrators of an estate suffer a judgment of eviction, obtained against its tenants, to remain unexecuted for a considerable period, during which the tenants are recognized as such, the judgment loses executory force and can not be enforced by execution."

In the case at bar the rent was received not after a judgment of eviction, but after the continued existence of the lease had been established, temporarily at least, by a judgment of dismissal.

The appeal will be dismissed.