**KEM ELECTRIC COOPERATIVE, INC.,**
**Plaintiff-Appellee,**

v.

**Leo G. MATERI and Melonia T. Materi,**
**Defendants-Appellants.**

**Civ. No. 9258.**

Supreme Court of North Dakota.

Nov. 30, 1976.

Wheeler, Wolf, Wefald & Peterson, Bismarck, for defendants and appellants; argued by Albert A. Wolf, Bismarck.

Robert Chesrown, Linton, and Bair, Brown & Kautzmann, Mandan, for plaintiff and appellee; argued by Bruce B. Bair, Jr., Mandan.

PAULSON, Judge.

This is an appeal by the defendants [hereinafter the Materis] from the judgment of the District Court of Emmons County dated January 23, 1976, in an eminent domain action, and from the order of said court dated April 2, 1976, denying the motion of the Materis to amend the findings or in the alternative for a new trial.

This action was commenced by KEM Electric Cooperative, Inc., a domestic corporation [hereinafter KEM Electric], under the power of eminent domain, to impose an easement over a 25-foot wide, 2½-mile long strip of the Materis' property to construct, operate, and maintain a 41,600-volt electric power transmission line.

The only issue raised on this appeal is whether the trial court erred in finding that the taking of the easement was necessary.

Section 32–15–05, N.D.C.C., provides:

"*What must appear before property taken.*—Before property can be taken it must appear:

"1. That the use to which it is to be applied is a use authorized by law.

"2. That the taking is necessary to such use.

"3. If already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use."

The Materis contend that KEM Electric failed to establish that the taking was necessary, pursuant to § 32–15–05(2), N.D.C.C. The Materis contend that KEM Electric could have erected the proposed transmission line on an existing easement owned by KEM Electric that runs parallel to and approximately 51 to 80 feet south of the proposed transmission line. They contend that the proposed 41,600-volt transmission line could be strung on the same poles which presently support the 7,200-volt distribution line located on the existing easement which KEM Electric had previously secured from the Materis.

The Materis presented no evidence at the trial challenging the necessity of the taking, but, rather, rely solely on their assertion that KEM Electric failed in its burden of proof to establish a prima facie case showing the necessity of the taking as required by § 32–15–05(2), N.D.C.C.

In *Otter Tail Power Company v. Malme*, 92 N.W.2d 514 (N.D.1958), in paragraphs 1, 2, and 3 of the syllabus, this court held:

"1. In this state the legislature has seen fit to take it out of the power of the person or corporation in an eminent domain action to settle the question of necessity, and entrust the determination of that issue to the judicial branch of the government.

"2. While in this state the necessity for the taking of property for a public use is a judicial question, nevertheless much latitude is given to the corporation vested with the right of acquiring property by eminent domain both in the selection and location of the route to be taken and in the taking of the particular property.

"3. Where the evidence relating to the selection of a route for a power transmission line discloses that the corporation vested with the right of eminent domain exercised in good faith its best judgment in the selection of a route for its line, and the easements sought to be taken therefor, and the selection of the same is compatible with the greatest public benefit and the least private injury, the finding of necessity for the taking of the route by the trial court will be sustained on appeal."

In *Malme, supra*, 92 N.W.2d at 521, this court stated:

"While under the laws of this state necessity must be established by evidence, such necessity need not signify an impossibility of constructing the improvement for which the power has been granted without taking the land in question, but merely requires that the land be reasonably suitable and useable for the improvement. [Citation omitted.] The evidence need only show reasonable or practical necessity. [Citation omitted.]

"The landowner may not object merely because some other location might have been made or some other property obtained that would have been as suitable for the purpose."

For recent discussion of the above, *see* 1 Nichols, Eminent Domain (3d Ed.) § 4.11; 29A C.J.S. Eminent Domain §§ 89(3), 90, 91.

In the instant case, the parties stipulated that the engineers employed in the project would not be required to testify. The only witness called to testify at the trial was George W. Cornog, the general manager of KEM Electric. Mr. Cornog testified that several alternate routes for the transmission line were considered, but that each was rejected for various reasons, including: access difficulty, interference with existing power lines, and interference with existing telephone lines. When asked on direct examination why the proposed transmission line was placed 125 feet from the section line, Mr. Cornog testified:

"A. The main reason that the proposed transmission line is placed in a 125 feet was to be able to get this line far enough north of the existing distribution line to have clearance, and the National Safety Code requires lines of this voltage to have sufficient clearance beyond the falling distance of one another, so if one line went down in a storm, it is not going to fall into the other line; the primary purpose is for safety reasons."

When asked on cross-examination what factors were considered in making the determination not to combine the present distribution line and the proposed transmission line, Mr. Cornog testified:

"A. There are two reasons why you do not under build a distribution line on a transmission line: one is for safety purposes and the second one is from a standpoint of service to the members consuming the power. When you under build with a high voltage transmission line on the top and if you have to work on the transmission line with the lower distribution line hot, then you have the danger to the personnel working on the line and if you kill the line to eliminate that danger, then you have an interruption in the service to the people who are served by the distribution line; so those are the two primary reasons generally speaking why you do not under build."

The Materis contend that such a showing of customer convenience in uninterrupted electric service and KEM Electric convenience and safety in construction and maintenance, is not sufficient to establish a prima facie case showing necessity for the taking, as required by § 32–15–05(2), N.D. C.C. No testimony was introduced on behalf of the Materis to establish either that another site would have been better or that it would have been just as feasible to have placed both the 7,200-volt distribution line and the 41,600-volt transmission line on the same poles.

■ This court notes preliminarily the sense in which we use the concept of KEM Electric's establishing a prima facie case. In *Husbands v. Commonwealth of Pennsylvania*, 395 F.Supp. 1107, 1139 (E.D.Penn. 1975), that court noted that:

". . . there are two senses in which courts use this concept. The first is in the sense of a plaintiff's producing evidence sufficient to render reasonable a conclusion in favor of the allegation he asserts. In the common instance of this use of the concept, it means plaintiff's evidence is sufficient to allow his case to go to the jury.

"In the second sense of the concept, however, courts use 'prima facie' to mean not only that plaintiff's evidence would

reasonably allow the conclusion plaintiff seeks, but also that plaintiff's evidence compels such a conclusion if the defendant produces no evidence to rebut it. Wigmore on Evidence, Vol. 9, § 2494 (1940).

"In turn, this latter sense of the concept of prima facie case has been refined further, so that the plaintiff's evidence not only compels defendant to produce evidence on the issue in question, but also shifts the burden of proof to the defendant on this issue. In other words, the plaintiff's evidence establishes a presumption in favor of his contention on the issue, and shifts the risk of non-persuasion on the issue to the defendant."

It is the first sense of prima facie case which is applicable to the instant case. KEM Electric has produced evidence sufficient to render reasonable a conclusion in favor of the allegation it asserts—that the taking is necessary—thus allowing KEM Electric to submit its case to the fact finder, the district court judge, on the issue of necessity.

The record supports the trial court's findings that KEM Electric did not act arbitrarily or capriciously and that such taking was compatible with the greatest public benefit and the least private injury. Further, the record is without evidence to the contrary. In *Berry-Iverson Co. of North Dakota v. Johnson,* 242 N.W.2d 126, 129 (N.D.1976), we stated:

"Findings of fact by the district court, in a case tried upon the facts without a jury, will not be set aside by this Court unless they are clearly erroneous. Rule 52(a), N.D.R.Civ.P. . . ."

Furthermore, in *Berry Iverson, supra* at 129, this court quoted with approval from *Eakman v. Robb,* 237 N.W.2d 423 (N.D. 1975), paragraph 4 of the syllabus, wherein this court held:

"4. A finding is 'clearly erroneous' only when although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. The mere fact that the appellate court might have viewed the facts differently, if it had been the initial trier of the case, does not entitle it to reverse the lower court."

We decline to set aside the trial court's findings relative to the issue of necessity.

The judgment of the district court and the order denying the Materis' motion to amend findings or in the alternative for a new trial are affirmed.

ERICKSTAD, C. J., and PEDERSON, VOGEL and SAND, JJ., concur.