OAKES MUNICIPAL AIRPORT AUTHORITY, a public body corporate, Plaintiff-Appellant,

v.

Raymond WIESE, Defendant-Appellee.

Civ. No. 9429.

Supreme Court of North Dakota.

April 20, 1978.

Rehearing Denied May 12, 1978.

Bosard, McCutcheon, Kerian, Schmidt & Holum, Ltd., Minot, for plaintiff and appellant; argued by Jon R. Kerian, Minot.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for defendant and appellee; argued by Kermit Edward Bye, Fargo.

PAULSON, Justice.

This is an appeal by the Oakes Municipal Airport Authority [hereinafter Oakes] from the judgment of the Dickey County District Court entered on December 13, 1977, dismissing with prejudice Oakes' condemnation action against Raymond Wiese. The judgment of dismissal was based upon the district court's determination that the issues involved in the action had been determined in a prior condemnation action commenced by Oakes against Wiese and that the doctrine of *res judicata* precluded the re-litigation of those issues. Oakes asserts, on this appeal, that the doctrine of *res judicata* was not applicable and was not a proper ground for dismissing the current condemnation action against Wiese. Oakes requests this court to reverse the judgment of dismissal and to remand for a trial on the merits.

On December 10, 1975, Oakes commenced a condemnation action against Wiese in the Dickey County District Court to acquire a fee interest in 74.1 acres of Wiese's land, pursuant to Chapter 2–06 of the North Dakota Century Code, as part of a project to establish and construct a new airport to replace the existing airport facility at Oakes. A trial was held before the court, without a jury, and the court concluded that Oakes had "failed to establish public use, public necessity and the proper selection of property sought to be condemned so as to entitle it to the exercise of eminent domain and condemnation" of Wiese's land. In accordance with this conclusion, the district court, on October 20, 1976, entered a judgment dismissing Oakes' condemnation action with prejudice. No appeal was taken from that judgment of dismissal.

On June 27, 1977, approximately eight months after the judgment of dismissal had been entered, Oakes commenced another condemnation action against Wiese in the Dickey County District Court. In this second action, Oakes seeks to acquire from Wiese a fee interest in 37.93 acres for the new airport, plus a clear zone easement in 9.18 acres for air navigation purposes. Wiese moved for dismissal of this action on

the ground that the October 20, 1976, judgment of the district court was *res judicata* with respect to the issues raised and barred their re-litigation in the second condemnation action. The district court concluded that the issues in this second action had been raised and determined in the first action and that Oakes was therefore barred from re-litigating the case. Accordingly, the district court, on December 13, 1977, entered a judgment dismissing the second condemnation action with prejudice. Oakes now appeals from that judgment.

Oakes alleges that the district court erred when it determined that the second action against Oakes was barred by the *res judicata* effect of the October 20, 1976, judgment of dismissal and Oakes raises the following two issues in this regard:

1. Whether the October 20, 1976, judgment of dismissal by the district court was void and without *res judicata* effect because the district court lacked jurisdiction to determine the public necessity of the proposed taking by the condemning authority; and

2. Whether the doctrine of *res judicata* bars a subsequent action by a condemning authority to acquire land which was sought by and denied to the condemning authority in a prior condemnation action against the same party.

Oakes asserts that the October 20, 1976, judgment of dismissal was void because the district court lacked jurisdiction to determine the public necessity of the proposed taking. We disagree with the assertion that the district court lacked jurisdiction to determine the question of public necessity.

Pursuant to subsection 2 of § 32–15–05, N.D.C.C., the legislature has entrusted the right to review a determination of the question of necessity in an eminent domain action to the judicial branch of government. *KEM Elec. Coop., Inc. v. Materi*, 247 N.W.2d 668 (N.D.1976); *Otter Tail Power Company v. Malme*, 92 N.W.2d 514 (N.D. 1958); *County of Pembina v. Nord*, 78 N.D. 473, 49 N.W.2d 665 (1951). Pursuant to § 2–06–08, N.D.C.C., the acquisition of property through eminent domain by an airport authority must be accomplished in the manner provided by Chapter 32–15, N.D.C.C. Consequently, the issue of the necessity for a taking of property by an airport authority under Chapter 2–06, N.D. C.C., is ultimately for the courts to determine.

Oakes asserts, however, that § 2–06–17, N.D.C.C., declares that an acquisition of land by an airport authority under Chapter 2–06, N.D.C.C., is for a public purpose and is a public necessity,[1] and that the courts are thereby without power to determine the question of public necessity in condemnation actions initiated by airport authorities under Chapter 2–06, N.D.C.C. Oakes' assertion is unpersuasive. Although § 2–06–17, N.D.C.C., expresses a clear intent that property which is properly acquired by an airport authority for the purposes enumerated in Chapter 2–06, N.D.C.C., shall be considered an acquisition for a public purpose and a matter of public necessity, the decision as to the necessity of a particular taking for a use authorized by Chapter 2–06, N.D.C.C., remains a question for the courts to review under § 32–15–05, N.D. C.C.

---

1. The full text of § 2–06–17, N.D.C.C., provides as follows:

"2–06–17. *Public purpose.*—The acquisition of any land, or interest therein, pursuant to this chapter, the planning, acquisition, establishment, development, construction, improvement, maintenance, equipment, operation, regulation, and protection of airports and air navigation facilities, including the acquisition or elimination of airport hazards, and the exercise of any other powers herein granted to authori-

ties and other public agencies, to be severally or jointly exercised, are hereby declared to be public and governmental functions, exercised for a public purpose, and matters of public necessity. All land and other property and privileges acquired and used by or on behalf of any authority or other public agency in the manner and for the purposes enumerated in this chapter shall and are hereby declared to be acquired and used for public and governmental purposes and as a matter of public necessity."

To clarify the court's role in the determination of the question of public necessity, we emphasize that the determination of a condemning authority to exercise the power of eminent domain for an authorized public use is solely a legislative or political question which is not subject to judicial review. *City of Grafton v. St. Paul, M. & M. Ry. Co.*, 16 N.D. 313, 113 N.W. 598 (1907). For example, the courts cannot review or disturb an airport authority's determination that a new airport facility is necessary. The court's review of public necessity is limited to the question of whether the taking of the particular property sought to be condemned is reasonably suitable and usable for the authorized public use. *KEM Elec. Coop., Inc., supra; Otter Tail Power Company, supra.* Much latitude is given to the condemning authority to determine the location and the extent of the property to be acquired, and a taking is not objectionable merely because some other location might have been made or some other property obtained that would have been as suitable for the purpose. *Otter Tail Power Company, supra.* In the absence of bad faith, gross abuse of discretion, or fraud by the condemning authority in its determination that the property sought is necessary for the authorized use and is pursuant to specific statutory authority, such determination should not be disturbed by the courts. *See, Board of Education of City of Minot v. Park District*, 70 N.W.2d 899 (N.D. 1955); *Northern Pacific Ry. Co. v. Kreszeszewski*, 17 N.D. 203, 115 N.W. 679 (1908).

We conclude that the district court had jurisdiction to determine the question of public necessity. Any errors by the court in the exercise of its jurisdiction were subject to correction by appeal from the October 20, 1976, judgment of dismissal. The judgment was a valid one, and failure to appeal from that judgment resulted in its becoming conclusive and binding upon the parties with *res judicata* effect as to the issues determined therein.

Oakes also asserts on this appeal that the doctrine of *res judicata* does not bar a condemning authority from initiating a second condemnation action to acquire land it sought and was denied in a former condemnation action against the same party.

The doctrine of *res judicata* is that a valid, existing final judgment is conclusive, with regard to the issues raised and determined therein, as to the parties and their privies in all other actions. *See, Dolajak v. State Auto. & Cas. Underwriters*, 252 N.W.2d 180 (N.D.1977). The purpose of the doctrine is to require a definite termination of litigation and to prevent the multiplicity, waste, and harassment which would result if a party could compel an adversary to re-litigate matters previously raised at issue and determined. *Kallberg v. Newberry*, 43 N.D. 521, 170 N.W. 113 (1918); *Corbin v. Madison*, 12 Wash.App. 318, 529 P.2d 1145 (1974); *Gleason v. Hardware Mut. Casualty Co.*, 324 Mass. 695, 88 N.E.2d 632 (1949); *Massie v. Paul*, 263 Ky. 183, 92 S.W.2d 11 (1936).

Although the doctrine of *res judicata* applies to condemnation actions, the doctrine is not readily applicable to those cases in which a condemning authority seeks to bring a second condemnation action to acquire a part of the same land for which the courts in a prior condemnation action against the same party determined that the condemning authority had failed to prove a public use or public necessity. Those cases possess a unique character to which the doctrine is not readily applied—in that, as time passes from the entry of the judgment in a condemnation action, changes may occur which would add new and important factors to be considered in a determination of whether a proposed taking in a subsequent action is for a public purpose and whether the particular land sought is necessary for that public purpose. The change in circumstances may present an entirely new case for determination even though the same issues involving public use and public necessity had been determined in a prior condemnation action between the same parties involving the same land.

In J. Lewis, A treatise on the Law of Eminent Domain in the United States (3d Ed. 1909), Volume II, § 605, pages 1069–

1070, the following comment is made regarding the commencement of a subsequent proceeding to acquire land for an improvement which was denied in an earlier proceeding:

"As an improvement which is not necessary at one time may become so by reason of the change of circumstances, it would seem upon principle that, in the absence of any statute controlling the matter, a former application should not be a bar to a new one for the same improvement, unless brought so soon after the first that there could not presumably be any change of circumstances."

■ Our research of this issue has not led us to any recent cases regarding the applicability of the doctrine of *res judicata* where a condemning authority is bringing a subsequent condemnation action to acquire the same land sought in a prior condemnation action against the same party. However, the existing authorities do indicate an adherence to the following general rule: A prior unsuccessful attempt to acquire property for a public purpose should not bar the commencement of a subsequent action to acquire the same land providing the court is satisfied that the subsequent action was brought in good faith and that there has been a change of circumstances such that the action is not merely an attempt to relitigate identical issues based upon identical factors for consideration. *See, City of Chicago v. Walker*, 251 Ill. 629, 96 N.E. 536 (1911); *Laguna Drainage Dist. v. Charles Martin Co.*, 5 Cal.App. 166, 89 P. 993 (1907); *Perkiomen v. Sumneytown Turnpike Road*, 25 Pa.Super. 462 (1904); *Warlick v. Lowman*, 111 N.C. 532, 16 S.E. 336 (1892); *Terry v. Town of Waterbury*, 35 Conn.Rep. 526 (1869); *Whitcher v. Town of Landaff*, 48 N.H.Rep. 153 (1868); Petition of Howard, 8 Foster's Reports 157 (N.H.Super.Ct. of Judicature 1854). We believe the above stated general rule provides a workable standard upon which the courts can determine whether a prior adjudication will bar a second condemnation action brought by a condemning authority against the same party.

■ The first condemnation action Oakes commenced against Wiese sought 74.1 acres of land, whereas the subsequent condemnation action seeks to acquire only 37.93 acres in fee, together with a clear zone easement in 9.18 acres. Although the second action involves the same land sought in the first condemnation action against Wiese, the requested taking is only for approximately one-half of the acres sought in the first action. This substantial reduction in the acres sought is a changed circumstance which may, in itself, have a decisive impact on a redetermination of whether the taking is necessary for the authorized use. The second condemnation action was commenced approximately eight months after the entry of judgment in the first action and, as of this writing, approximately eighteen months have passed from the date of the entry of the judgment in the first action. From this mere passage of time, changes in the use and requirements of an airport facility may occur which affect the determination of whether the proposed taking by Oakes is necessary for the authorized use. Furthermore, there is no indication in the record that Oakes has brought this action in bad faith.

We conclude that, as a matter of law, there has been a sufficient showing of changed circumstances so as to preclude the application of the doctrine of *res judicata* from barring the second condemnation action by Oakes against Wiese. We believe the public policy of precluding the re-litigation of settled issues and the harassment which can result therefrom is not compromised by allowing this second condemnation action against Wiese to proceed on its merits.

In accordance with this opinion, the December 13, 1977, judgment of the Dickey County District Court is reversed, and the case is remanded for a trial on the merits.

ERICKSTAD, C. J., and SAND, and VOGEL, JJ., concur.

PEDERSON, Justice, concurring in part and dissenting in part.

I concur in the reversal and the remand for trial. I would limit the trial to a deter-

702

mination of damages. Res judicata does not bar the Oakes Municipal Airport Authority from condemning Wiese's land now or at any time in the future.

The doctrine of res judicata is a judicially created doctrine which may be said to exist as an obvious rule of reason, justice, fairness, expediency, practical necessity, and public tranquillity. See 46 Am.Jur.2d Judgments, § 395, and cases cited therein. There are situations, at least in eminent domain proceedings (including inverse condemnations), in which, by reason of statutes or otherwise, it becomes impossible, unfair or impractical to apply the doctrine. See cases cited in 30 C.J.S. Eminent Domain § 415.

Although repeals (and amendments) by implication may not be preferred, when a specific statute is in fact in conflict with a general statute, the special provision shall prevail. Section 1–02–07, NDCC.

Section 2–06–08, NDCC, provides, in part, that:

"Notwithstanding the provisions of any other statute or other law of this state, an authority may take possession of any property to be acquired by eminent domain proceedings at any time after the commencement of such proceedings."

The authority to judicially review necessity for taking, as found in Chapter 32–15, NDCC, has been cancelled by the provision authorizing immediate possession. If the court is to actually review necessity for taking, it must have authority to divest the taker of possession or right of possession. I find no such authority granted.