# IN THE SUPREME COURT

# STATE OF NORTH DAKOTA

2019 ND

Montana-Dakota Utilities Co., a Division of
MDU Resources Group, Inc., n/k/a Montana-
Dakota Utilities Co., a Subsidiary of MDU
Resources Group, Inc.,

Plaintiff, Appellant, and
Cross-Appellee

v.

Lavern Behm,

Defendant, Appellee, and
Cross-Appellant

No. 20180321

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Gary H. Lee, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Tufte, Justice.

Anthony J. Ford (argued) and Malcolm H. Brown (appeared), Bismarck, N.D., for plaintiff, appellant, and cross-appellee.

Lynn M. Boughey, Mandan, N.D., for defendant, appellee, and cross-appellant.

**Tufte, Justice.**

[¶1]     Montana-Dakota Utilities Co. ("MDU") appeals, and Lavern Behm cross-appeals, from a judgment dismissing MDU's eminent domain action. Because the district court misapplied North Dakota law in concluding a taking was not necessary for a public use, we reverse and remand for trial on eminent domain damages to be awarded to Behm.

I

[¶2]     MDU brought an eminent domain action under N.D.C.C. ch. 32-15 to acquire an easement across Behm's property for a 3,000-foot natural gas pipeline to service a Burlington Northern Santa Fe ("BNSF") railroad switch. The railroad switch must be heated to keep it operable during winter months. The switch is currently heated using propane from tanks that are serviced and refilled by truck. Winter weather occasionally prevents service trucks from accessing the tanks to refill the propane. BNSF requested service from MDU by gas pipeline, believing that natural gas by pipeline would increase reliability and decrease the cost associated with heating the switch. MDU claimed that other routes for the pipeline would be too expensive or might in the future require modification or removal of the pipeline.

[¶3]     The district court bifurcated the proceedings between necessity and damages. Following a bench trial, the district court concluded that the "proposed pipeline is . . . a use authorized by Section 32-15-02, NDCC," but that a taking of Behm's property was not necessary for the public use under N.D.C.C. § 32-15-05. Relying on an 1883 California case for the proposition that "necessity cannot mean mere convenience," the court explained:

> MDU's proposal is to place a 3000 foot pipeline beneath Lavern Behm's property for the benefit of a single user, Burlington Northern Santa Fe. While it is certainly not subject to dispute that maintaining railway switches is a necessity to the safe operations of the railroad, the

construction of this pipeline is not necessary for this purpose. The current switch has been, and can continue to be maintained through the use of propane. The proposed pipeline serves only the convenience of a single user, Burlington Northern Santa Fe, while imposing a permanent restriction on Lavern Behm's use of his private property.

The location of the proposed pipeline further stretches the meaning of necessity to mean mere convenience to MDU. That convenience is not even a present convenience, but one of a future, highly speculative convenience.

. . . .

The proposed taking [of] Lavern Behm's property for the purpose of this pipeline is thus premised on a project to benefit a single user, Burlington Northern Santa Fe. It is to be placed on Lavern Behm's property, a mere 5 feet from the existing 33 foot section line right [of way]. That placement is deemed necessary by MDU based on the speculative fear of a future event which may never occur, and even if it does, may not necessitate the repair or replacement of the pipeline. The necessity proposed by MDU is nothing more than its own mere convenience.

Contrasted to this are Lavern Behm's rights to own his property and to farm or otherwise develop it as he sees fit, without the burden of this easement. The burden on Lavern Behm is immediate and permanent as opposed to the uncertain and speculative necessity argued by MDU.

The Court therefore finds that the proposed taking and pipeline route is not compatible with the greatest public benefit when weighed against the immediate and permanent private injury to Lavern Behm.

The court further concluded that "[t]his one-sided analysis by MDU, resolving all uncertainties and speculations in its favor, and without consideration of Lavern Behm's rights of ownership is arbitrary and capricious."

## II

[¶4]   MDU argues the district court's ruling that the proposed taking was not necessary contradicts North Dakota law.

[¶5]   In *Brandt v. City of Fargo*, 2018 ND 26, ¶ 11, 905 N.W.2d 764, we recently restated the standard for a court's review of questions of public necessity:

Under N.D.C.C. § 32-15-05(2), "the legislature has entrusted the right to review a determination of the question of necessity in an eminent domain action to the judicial branch of government." *Oakes Mun.*

*Airport Auth. v. Wiese*, 265 N.W.2d 697, 699 (N.D. 1978); *see also KEM Elec. Coop., Inc., v. Materi*, 247 N.W.2d 668, 670 (N.D. 1976); *Otter Tail Power Co. v. Malme*, 92 N.W.2d 514, 521 (N.D. 1958); *Cty. of Pembina v. Nord*, 78 N.D. 473, 477, 49 N.W.2d 665, 667 (1951). In *Wiese*, 265 N.W.2d. at 700 (citations omitted), this Court clarified the court's role in determining public necessity:

> To clarify the court's role in the determination of the question of public necessity, we emphasize that the determination of a condemning authority to exercise the power of eminent domain for an authorized public use is solely a legislative or political question which is not subject to judicial review. . . . The court's review of public necessity is limited to the question of whether the taking of the particular property sought to be condemned is reasonably suitable and usable for the authorized public use. Much latitude is given to the condemning authority to determine the location and the extent of the property to be acquired, and a taking is not objectionable merely because some other location might have been made or some other property obtained that would have been as suitable for the purpose. In the absence of bad faith, gross abuse of discretion, or fraud by the condemning authority in its determination that the property sought is necessary for the authorized use and is pursuant to specific statutory authority, such determination should not be disturbed by the courts.

[¶6] Behm's primary issue in his cross-appeal is that this Court has misinterpreted our earlier eminent domain case law since the *Wiese* decision was rendered in 1978. According to Behm, the problem was exacerbated by dicta in *Cent. Power Elec. Coop., Inc. v. C-K, Inc.*, 512 N.W.2d 711, 714 n.2 (N.D. 1994), where this Court said in the course of dismissing for lack of jurisdiction, "[w]hen contested, necessity is generally found unless the condemnor acted arbitrarily, capriciously, in bad faith, or fraudulently." Behm argues earlier cases such as *KEM Elec. Coop., Inc. v. Materi*, 247 N.W.2d 668 (N.D. 1976); *Otter Tail Power Co. v. Malme*, 92 N.W.2d 514 (N.D. 1958); *Bd. of Educ. of City of Minot v. Park Dist.*, 70 N.W.2d 899 (N.D. 1955); and *N. Pac. Ry. Co. v. Boynton*, 17 N.D. 203, 115 N.W. 679 (1908), stand for the proposition that the limited standard of review for bad faith, gross abuse of discretion,

3

or fraud committed by the condemnor applies only to the extent of a proposed taking and not to the necessity of the taking. Behm urges that we adopt an expanded judicial review of the necessity of taking so condemnors cannot "use any presumption or standard of proof to [countenance] a taking that is not first fully justified as necessary and for a proper public use." To the extent he is not simply misreading our cases, Behm has not provided persuasive reasons for us to depart from the reasoning in more than 40 years of our precedent.

A

[¶7]    Section 32-15-05(1), N.D.C.C., requires that before property can be taken from a landowner, it must appear "[t]hat the use to which it is to be applied is a use authorized by law." MDU argues the district court correctly ruled that its proposed taking is for a public use authorized by law. Behm contends the district court did not find that the proposed taking was for a public use authorized by law, but instead that the taking was for the mere convenience of a single user, BNSF. We interpret Behm's argument to be that the court erred in ruling the proposed taking was for a public use.

[¶8]    The Century Code authorizes exercise of eminent domain for the following public uses:

> Oil, *gas*, coal, and carbon dioxide *pipelines and works and plants for supplying or conducting gas*, oil, coal, carbon dioxide, heat, refrigeration, or power *for the use of any county, city, or the inhabitants thereof*, together with lands, buildings, and all other improvements in or upon which to erect, install, place, maintain, use, or operate pumps, stations, tanks, and other machinery or apparatus, and buildings, works, and plants for the purpose of generating, refining, regulating, compressing, transmitting, or distributing the same, or necessary for the proper development and control of such gas, oil, coal, carbon dioxide, heat, refrigeration, or power, either at the time of the taking of said property or for the future proper development and control thereof.

N.D.C.C. § 32-15-02(10) (emphasis added); *see also* N.D.C.C. § 32-15-02(4) (including as "public uses" both "railroads" and "pipes for public transportation").

[¶9]    Where a property owner contests "public use" under N.D.C.C. ch. 32-15, "there is a presumption a use is public when the Legislature has declared it to be and

4

we treat the Legislature's decision with the deference due a coordinate branch of government." *City of Medora v. Golberg*, 1997 ND 190, ¶ 8, 569 N.W.2d 257. Nevertheless, "the ultimate decision regarding whether a proposed use of property is, in fact, a public use is a judicial question." *Id.* "Private property may not be taken for the use of, or ownership by, any private individual or entity, unless that property is necessary for conducting a common carrier or utility business." N.D.C.C. § 32-15-01(2). Where, as here, eminent domain is exercised by a utility business, "[c]ondemnation for service to a single industrial customer does not forestall a finding that the taking is for a public use." *United States ex rel. Tenn. Valley Auth. v. An Easement and Right-of-Way Over 1.8 Acres of Land, More or Less, in Maury Cty., Tenn.*, 682 F. Supp. 353, 358 (M.D. Tenn. 1988); *see also Carolina Tel. and Tel. Co. v. McLeod*, 364 S.E.2d 399, 401 (N.C. 1988); *Dyer v. Tex. Elec. Serv. Co.*, 680 S.W.2d 883, 885 (Tex. Ct. App. 1984); 2A J. Sackman, *Nichols on Eminent Domain* § 7.05[4][a] (3rd ed. 2018).

[¶10]   MDU, the condemnor, and BNSF, the customer it intends to serve, are both "a common carrier or utility business." N.D.C.C. § 32-15-01(2). It is only MDU's use of the easement to pipe gas, not that of its customer BNSF to heat its switch with the gas, that is relevant to the public use determination here. MDU's proposed pipeline to supply natural gas to BNSF for the purpose of heating the railroad switch is for a public use because MDU is a public utility, even though the portion of the pipeline at issue here is intended to serve only a single customer. The district court correctly concluded the "proposed pipeline is . . . a use authorized by Section 32-15-02, NDCC."

B

[¶11]   MDU argues the district court erred in ruling the proposed taking of Behm's property was not necessary for the public use but was of "mere convenience to MDU." Before property may be taken for a use authorized by law, "it must appear . . . [t]hat the taking is necessary to such use." N.D.C.C. § 32-15-05(2); N.D.C.C. § 32-15-01(2) ("Private property may not be taken for the use of, or ownership by, any

5

private individual or entity, unless that property is necessary for conducting a common carrier or utility business.").

[¶12] In support of its decision, the district court relied on an 1883 California Supreme Court decision, *Spring Valley Water-Works v. San Mateo Water-Works*, 28 P. 447 (Cal. 1883), in which the court affirmed a decision refusing to allow a water corporation to condemn 28 acres of land:

> Private property, contiguously situated to the works of a corporation, may be very convenient for its corporate purpose, and the acquisition of the same might add to the wealth of the corporation by enhancing the value of the property which it has in hand, and yet not be reasonably necessary to the corporation in the discharge of its duty to the public. "For public uses the government has the right to exercise its power of eminent domain and take private property, giving just compensation; but for public convenience it has not. A public convenience is not such a necessity as authorizes the exercise of the right of eminent domain. The taking of private property for public uses is in derogation of private right, and in hostility to the ordinary control of the citizen over his estate, and statutes authorizing its condemnation are not to be extended by inference or implication."

*Id.* at 449. Here, the district court reasoned that no necessity was shown because a pipeline crossing Behm's property would only serve the convenience of MDU, which could select an alternative route for the pipeline, and the convenience of BNSF, which could continue to heat its railroad switch with propane.

[¶13] The district court's analysis of the necessity of the public use is inconsistent with North Dakota law. Unlike in *Spring Valley Water-Works*, the easement sought by MDU is not a taking for "mere convenience." In *Materi*, 247 N.W.2d at 671-72, we held that a showing of customer convenience in uninterrupted electric service and the condemnor's convenience and safety in construction and maintenance was sufficient to render reasonable a conclusion in favor of a taking's necessity. In *Spring Valley Water-Works* the court found it relevant to the necessity analysis "that it was entirely practicable for the plaintiff to construct on its own land, just above the land of defendant, the improvement for which it seeks to condemn the defendant's land." 28 P. at 450. In contrast, MDU does not own adjacent land on which it could

6

construct a pipeline. We have held that "a taking is not objectionable merely because some other location might have been made or some other property obtained that would have been *as suitable* for the purpose." *Brandt*, 2018 ND 26, ¶ 11, 905 N.W.2d 764 (quoting *Wiese*, 265 N.W.2d at 700) (emphasis added).

[¶14] A "court's review of public necessity is limited to the question of whether the taking of the particular property sought to be condemned is reasonably suitable and usable for the authorized public use." *Brandt*, 2018 ND 26, ¶ 11, 905 N.W.2d 764 (quoting *Wiese*, 265 N.W.2d at 700). In *C-K, Inc.*, 512 N.W.2d at 714, n.2, we said:

> While we have said before that "landowner[s] may not object merely because some other location might have been made or some other property obtained that would have been *as suitable* for the purpose," *KEM*, 247 N.W.2d at 671, citing to *Otter Tail Power Co. v. Malme*, 92 N.W.2d 514, 521 (N.D. 1958) (emphasis ours), we have not held that this proposition stands when the property chosen for the route is *less suitable*. In light of the growing body of case law in the area of electromagnetic fields, *see* 8A Nichols, *Eminent Domain* ch. 26 (3d ed.), Landowners in this case may have a valid argument that alternate routes benefit the public with less private injury.

[¶15] Behm proposed two alternative routes for the pipeline. The first would run through BNSF's current east-west railroad easement. The second would run along a north-south section line right of way adjacent to the route selected by MDU. MDU presented evidence that the first alternative route would add 18,000 feet of pipeline to the project at an additional cost of $1,200,000. The second alternative route would result in MDU's easement being subordinate to the public's section line right-of-way easement with MDU being forced to accommodate at its expense any conflicts that might arise. We have acknowledged it is reasonable for a condemnor to consider possible future development in determining whether the property sought to be condemned is reasonably suitable for the project. *Malme*, 92 N.W.2d at 522 ("Experience had demonstrated that the location of the line far enough in on the land of the owner to avoid the necessity of moving the line in case of widening or the relocation of a road or highway was advantageous."). The determination of necessity must always balance the burden on the affected landowner and the benefit of the

7

public use. A risk of future development or conflict with prior easements is one factor that may be considered. Although the particular property sought to be condemned "must be located in the manner which will be compatible with the greatest public benefit and the least private injury," N.D.C.C. § 32-15-06, Behm has not demonstrated how MDU erred in weighing those interests.

[¶16]   The district court's belief that the pipeline was unnecessary because BNSF could continue to heat the railroad switch with propane erroneously focuses on the customer's necessity rather than the public utility's necessity. Whether a project is necessary at all, including the "condemning authority's determination to exercise the power of eminent domain for an authorized public use[,] is a legislative question which is not subject to judicial review." *Brandt*, 2018 ND 26, ¶ 12, 905 N.W.2d 764. The necessity inquiry under N.D.C.C. § 32-15-05(2) turns on whether the particular property proposed to be taken is necessary for the public use, not whether the authorized public use is itself necessary. Section 49-04-01, N.D.C.C., provides:

> Every public utility shall furnish, provide, and maintain such service, instrumentalities, equipment, and facilities as shall promote the safety, health, comfort, and convenience of its patrons, employees, and the public, and as shall be in all respects adequate, convenient, just, and reasonable, and without any unjust discrimination or preference.

The court's consideration of BNSF's preference for gas by pipeline to heat its railroad switch misapplied the law. It is the necessity of MDU, not that of BNSF that is the proper consideration. To the extent that we have considered the members of the public served by the condemnor's proposed public use, we have said "convenience to the public becomes a necessity for the board of education in establishing a junior high school." *Bd. of Educ. of City of Minot*, 70 N.W.2d at 906.

[¶17]   Ultimately, it appears the district court substituted its judgment for that of the condemning authority. "In the absence of bad faith, gross abuse of discretion, or fraud by the condemning authority in its determination that the property sought is necessary for the authorized use and is pursuant to specific statutory authority, such determination should not be disturbed by the courts." *Brandt*, 2018 ND 26, ¶ 11, 905

N.W.2d 764 (quoting *Wiese*, 265 N.W.2d at 700). Behm did not establish that MDU acted in bad faith, grossly abused its discretion, or committed fraud in determining whether its chosen route across Behm's property was reasonably suitable in terms of the greatest public benefit and the least private injury.

[¶18]   We conclude the district court erred in ruling MDU's proposed taking was not necessary for a public use.

### III

[¶19]   Behm lists ten issues in his cross-appeal but does not specifically address any of them in his brief. We do not address inadequately briefed issues. *See, e.g., State v. Nice*, 2019 ND 73, ¶ 11, 924 N.W.2d 102. We reverse the judgment and remand for trial on eminent domain damages to be awarded to Behm.

[¶20]   Jerod E. Tufte
Jon J. Jensen
Carol Ronning Kapsner, S.J.
Daniel J. Crothers, Acting C.J.

[¶21]   The Honorable Carol Ronning Kapsner, Surrogate Judge, sitting in place of VandeWalle, C.J., disqualified. The Honorable Lisa Fair McEvers disqualified herself subsequent to oral argument and did not participate in this decision.