IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Condemnation by the Mercer Area | : | |
| School District of Mercer County | : | |
| for Acquisition of Land for | : | |
| School Purposes in the Borough of | : | |
| Mercer, Being the Lands of | : | No.  448 C.D. 2019 |
| Kevin and Doreen Wright and | : | |
| Glenn and Edith Krofcheck | : | Submitted:  November 27, 2019 |
| | : | |
| Appeal of:  Mercer Area School | : | |
| District | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ELLEN CEISLER, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                           FILED:  April 15, 2020


Mercer Area School District (District) appeals from the March 22, 2019 order of the Court of Common Pleas of Mercer County (trial court) sustaining the preliminary objections of Kevin and Doreen Wright, husband and wife, and Glenn and Edith Krofcheck, husband and wife (collectively, Landowners), and dismissing the District's declaration of taking, with prejudice, based upon the doctrine of res judicata. We affirm.

By way of background, this appeal involves the third declaration of taking that the District has filed seeking to condemn property owned by Landowners to expand an access road to a school and improve its facilities. This appeal also marks

the third time that this case has come before this Court. *See In re Condemnation by Mercer Area School District* (Pa. Cmwlth., No. 58 C.D. 2016, December 15, 2016) (unreported) ("*Mercer II*"); *In re Condemnation by Mercer Area School District* (Pa. Cmwlth., No. 2269 C.D. 2012, filed March 17, 2014) (unreported) ("*Mercer I*").

In the first action, the District filed a declaration of taking on October 14, 2010, pursuant to a September 20, 2010 resolution authorizing the taking of a .52-acre lot owned by Landowners. According to the resolution passed by the District's board members (School Board), the purpose of the taking was to expand the District's driveways for its educational programs and to improve emergency ingress and egress from the District's property. By opinion and order dated December 7, 2011, the trial court granted Landowners' preliminary objections, determining that the District's proposed taking was excessive, done in bad faith, and constituted an abuse of discretion. In so concluding, the trial court emphasized that the School Board failed to conduct basic due diligence. As this Court recounted in *Mercer I*,

> [t]he trial court concluded that the District abused its discretion in "moving too quickly and without adequate preparation when voting" to pass the resolution authorizing the taking. Specifically, the trial court found that the [School Board] did not review any plans, drawings, or maps prior to the vote; failed to consult an expert, such as an engineer or the Department of Transportation (DOT), to determine where the access road should be located on the property; and did not conduct an investigation to determine how much land was needed for the emergency access. In addition, the trial court found that there were no tangible plans to indicate how the land would be used within a reasonable time; explain how the District would acquire an easement to connect adjacent streets; or demonstrate how the District would obtain the legal rights to a 25-foot driveway owned by Landowners that was necessary to complete the access road, but was not listed for condemnation in either the resolution or the declaration. Finally, the trial court found that the [School Board] lacked

2

an "informed perception" because [it] did not express any questions or concerns prior to the vote and were unable to identify on a map the property [it] had just voted to take; rather, the [School Board's] decision was based solely on the recommendation of the District's Superintendent and Solicitor who advised that there was nothing illegal about taking the property.

*Mercer I*, slip op. at 2-3 (internal citations omitted).

However, in footnote 13 of its opinion, the trial court provided the District with detailed advice on how to cure these deficiencies in the event the District would seek to develop and/or condemn the property in the future.[1]

Thereafter, the District did not appeal to this Court, but instead, commenced a second action by filing another declaration of taking on May 2, 2012. This declaration was filed pursuant to a new resolution adopted on February 27, 2012, by the School Board and sought to condemn a lot located in a subdivision, together with a strip of land and a driveway, totaling approximately 1.83 acres. As in the first action, Landowners were the owners of this property. According to the resolution and declaration of taking, the purpose of the taking was "to acquire property for emergency

---

[1] In its entirety, this footnote stated:

It is clear that upon reading the depositions, each was relying on someone else's work to assess whether the requirements for condemnation had been met. It is clear to this [c]ourt, however, that the requirements for condemnation have not been met. It is the suggestion of the [c]ourt that if the [District] still desires to develop the [property, the District] do the following: conduct a cost-benefit analysis of the proposed project, consult with an engineer or [DOT] to more accurately estimate how much land would be needed for the project, estimate the width of the new road, plan where the driveway will be located on the lot, estimate the cost of clearing the land, [and] pursue a right-of-way and/or easement . . . before condemning the subject property, etc. These suggestions are intended to serve as a guide and are not an exhaustive list of requirements.

*Mercer I*, slip op. at 3 (internal citation and emphasis omitted).

3

and/or improved access and egress to current District-owned property, and for the expansion of the District's current parking facilities." *Mercer I*, slip op. at 4. In turn, Landowners filed preliminary objections, asserting, among other things, that the District's second attempt to condemn their property was barred by res judicata. In response, the District argued that res judicata did not apply because it cured all of the defects outlined in the trial court's December 7, 2011 opinion. By order dated December 4, 2012, the trial court sustained Landowners' preliminary objections on the ground of res judicata and struck the declaration of taking. Thereafter, the District appealed to this Court.

In *Mercer I*, the District contended that res judicata was inapplicable because footnote 13 of the trial court's December 7, 2011 opinion implicitly recognized that the District had a right to file a second declaration and effectively granted it permission to do so. In addressing this argument, this Court explained that "even if all the elements of res judicata are met, res judicata will not prohibit a second action where a trial court's order or opinion dismissing the first action indicates the court's intent to permit the plaintiff to bring a second action." *Mercer I*, slip op. at 6. We concluded that the trial court's footnote adequately reserved to the District the right to file a second action because it provided the District with detailed guidance and instructions in order to institute a second action.[2] Therefore, we reversed the trial court's order striking the declaration of taking and remanded to the trial court for further proceedings.

---

[2] We explained:

> Here, the trial court in the first action found that the [School Board] abused [its] discretion and failed to make an informed decision when [it] passed the September 20, 2010 resolution authorizing the taking of Landowners' property. Footnote 13 of the trial court's December 7, 2011 opinion reflects the court's intention to permit the District to file

4

On remand, the trial court held an evidentiary hearing on Landowners' outstanding preliminary objections. By opinion and order dated December 16, 2015, the trial court sustained one of Landowners' preliminary objections and struck the declaration of taking. More specifically, the trial court concluded (very similar to the conclusion that it reached in *Mercer I*) that the District acted in bad faith in failing to properly investigate and make an informed decision regarding the taking of Landowners' property to construct a roadway to the school grounds and a parking lot. *See* Reproduced Record (R.R.) at 574a-99a.[3] Notably, the trial court arrived at its

---

another declaration of taking when the defects were cured. Specifically, the trial court's intention is made clear by the language contained in the footnote, which is expressed through a conditional, correlative conjunction; *i.e.*, **if** the District wants or "desires" to file another eminent domain action, **then** it must/should do the following … "before condemning the subject property." The District's right to commence a second eminent domain action is an absolute and necessary predicate to this conjunction. Therefore, by its very language, footnote 13 adequately reserved to the District the right to file a second condemnation action.

*Mercer I*, slip op. at 8 (emphasis in original).

[3] The trial court's summation of its legal conclusion was as follows:

In summary, the School Board did not make a properly informed decision because it did not allow an adequate amount of time to complete a thorough investigation, did not consider any alternative sites, did not conduct a sufficient cost/benefit analysis of this proposal let alone any other alternative sites, and did not have a well thought out and clear plan, as evidenced by the [Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§12101-12213,] violations in the proposed design, the lack of a study to determine the amount of parking spaces needed, if any, and the inadequacy of the Right of Way Agreement with [a third party]. Therefore, this preliminary objection will be GRANTED as to the abuse of discretion and bad faith allegation.

(R.R. at 597a.)

5

conclusion despite the District's purported attempts to cure the deficiencies that the trial court had previously outlined and detailed in the prior proceeding.

The District then appealed to this Court. Ultimately, in *Mercer II*, this Court affirmed the trial court "[b]ecause the District waived all of its issues on appeal by filing an untimely statement of errors pursuant to Pennsylvania Rules of Appellate Procedure (Pa.R.A.P.) 1925(b)." *Mercer II*, slip op. at 8. Our decision in *Mercer II* was filed on December 15, 2016. Subsequently, this Court denied the School District's motion for reargument/reconsideration on February 6, 2017, and our Supreme Court denied allowance of appeal on August 13, 2017.

Less than seven months later, on March 2, 2018, the School District filed its third declaration of taking following a resolution adopted on February 26, 2018, by the School Board. Nearly identical to the previous resolutions, the stated purpose of the proposed condemnation was to lengthen and expand a dead-end road to improve emergency ingress and egress from school property and to build a parking lot. The District's declaration was also extremely similar to the second one that it filed. Specifically, the District sought to condemn a lot located in a subdivision, together with a strip of land and a driveway, and the total amount of Landowners' land that the District desired to condemn was approximately the same amount of land that was designated for condemnation in the second declaration.

In an order and opinion dated March 22, 2019, the trial court granted Landowners' preliminary objections based solely on the doctrine of res judicata and dismissed the declaration of taking with prejudice. In doing so, the trial court stated:

> Here, all the elements of res judicata are satisfied. The third [d]eclaration of [t]aking . . . seeks to condemn the exact same property it attempted to take previously. The instant and prior actions are both condemnation cases. The parties named in these cases are the same and the [s]econd

6

declaration of [t]aking was disposed of through a final order entered after a hearing on the merits.

(Trial court order, 3/22/2019, at 5). After the District filed its Pa.R.A.P. 1925(b) statement, the trial court issued its Pa.R.A.P. 1925(a) opinion, wherein it further explained the thrust of its decision as follows: "Essentially this [c]ourt found that [the District's] third declaration of taking was a contrived attempt to overcome its loss of the appeal [in *Mercer II*] on the second declaration of taking." (R.R. at 1091a.)

On appeal to this Court,[4] the District contends that the trial court erred in concluding that res judicata barred its third declaration of taking.

"Under the doctrine of technical res judicata, often referred to as claim preclusion, when a final judgment on the merits exists, a future suit between the parties on the same cause of action is precluded." *Weney v. Workers' Compensation Appeal Board (Mac Sprinkler Systems, Inc.)*, 960 A.2d 949, 954 (Pa. Cmwlth. 2008). In order for technical res judicata to apply, there must be: "(1) identity of the thing sued upon or for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued." *Northwestern Lehigh School District v. Agricultural Lands Condemnation Approval Board*, 578 A.2d 614, 617 (Pa. Cmwlth. 1990). An exception to res judicata exists where there is a material change of circumstances from the first proceeding to the second proceeding. *Id.* at 616-17 & n.4.

Importantly, the District does not contest the trial court's conclusion that, based on the prior declarations of taking and the proceedings that accompanied them, all of the elements necessary for res judicata to apply to the present declaration of

---

[4] In an eminent domain proceeding where a court of common pleas has sustained preliminary objections to a declaration of taking, this Court's scope of review is limited to determining whether the trial court abused its discretion or committed an error of law, or whether the findings and conclusions are supported by substantial evidence. *Condemnation by Valley Rural Electric Cooperative, Inc. v. Shanholtzer*, 982 A.2d 566, 570 n.4 (Pa. Cmwlth. 2009).

taking were satisfied. The District also does not contend that our decision in *Mercer II* did not result in a valid, final, and binding judgment on the merits between the parties, namely one that is entitled to the preclusive effect that the law typically affords to a final judgment.[5]

Rather, the District asserts that, as a matter of substantive law for proceedings instituted under the Eminent Domain Code (the Code),[6] res judicata is a legal doctrine that applies only in the situation where there has been a final ruling on the merits that specifically encompassed a legal conclusion that the condemnor does not possess the right and authority to exercise the power of eminent domain. According to the District, res judicata cannot be employed in the situation where a declaration of taking is filed after a court of common pleas sustained a preliminary objection and dismissed a prior declaration of taking because it was "procedurally insufficient due to bad faith or an abuse of discretion." (District's Br. at 22.)

In the alternative, the District asserts that the "changed circumstances" exception to res judicata is applicable. In this regard, the District argues that its present declaration of taking is not barred by res judicata because it took actions to cure the deficiencies that the trial court previously identified in the prior opinions, *e.g.*, failure to complete a thorough investigation, failure to consider any alternative sites, and failure to conduct a study to determine the amount of property needed. The District

---

[5] Nor could the District seriously advance such an argument. For purposes of res judicata, it does not matter that this Court affirmed the trial court in *Mercer II* on the ground of waiver, for failure to preserve any issues on appeal results in the order below "becoming res judicata on the issue[s] decided therein," *Gardner v. Consolidated Rail Corp.*, 100 A.3d 280, 283 (Pa. Super. 2014), and, also, any and all "issues that could have been litigated in the first suit but were not." *Day v. Volkswagenwerk Aktiengesellschaft*, 464 A.2d 1313, 1316 (Pa. Super. 1983).

[6] 26 Pa.C.S. §§101-1106.

8

argues that its corrective measures, in essence, gave rise to a new and distinct claim or cause of action under the Code.

We disagree. Generally, in the absence of legislation indicating otherwise, the common law doctrine of res judicata operates to bar a condemnor from filing successive eminent domain actions. As one treatise explained:

> The principles of res judicata apply to final orders, judgments, and decrees in condemnation proceedings as to matters therein litigated. In accordance with the rules governing the application of the doctrine of res judicata to judgments generally with respect to matters concluded thereby, parties and their privies are concluded as to all matters that were put in issue, or might have been put in issue, or were necessarily implied in the decision, in the condemnation proceedings. **This includes all non-value issues in the condemnation proceeding**, **such matters as** the right to condemn, and the legality of the improvement for which the property was taken, and **the necessity, quantity, or nature of the property required or taken**. **It also includes such matters as the sufficiency of the description**, the ownership and condition of the title, the benefits to land not taken, damage to landowner's neighboring property, and the amount and items of compensation.
>
> **However, the judgment or award is not conclusive** as to matters that were not in issue or within the scope of the issues, **where** a subsequent action involves a different question, or **the operative facts underlying the condemnation petition and a subsequent petition are different, or as to matters that have not been determined in the prior proceeding**, or matters that the court or other tribunal does not have the jurisdiction to decide.

29A Corpus Juris Secundum, Eminent Domain (*Corpus Juris*) §517 (2013) (emphasis added) (footnotes and corresponding citations omitted).

Consistent with this general rule, in *Northwestern Lehigh School District*, the landowners owned a tract of farm land (property) that was designated as an

agricultural security area under the Agricultural Area Security Law (Law).[7] The property was adjacent to the school district's main campus, and the district petitioned the Agricultural Lands Condemnation Approval Board (Board) for approval to condemn the property for the construction of a middle school. The Board denied the district's proposed condemnation, concluding that the district's evidence was insufficient to meet its burden of showing that no reasonable alternative existed. The district appealed, and this Court affirmed.

Thereafter, the district filed a second petition with the Board, seeking approval to condemn the same property. The landowners filed an objection asserting res judicata, and the Board granted the objection and dismissed the district's petition. In its second appeal to this Court, the district argued that res judicata was inapplicable because its second petition was based on a different theory, changed circumstances, and evidence that was not presented in support of its first petition. Specifically, the district contended that it intended to introduce at the second hearing a study of alternative sites, which the district believed would satisfy the standard that it failed to fulfill in the first proceeding. The district also argued that it did not have enough time to prepare properly for its first petition to the Board and that it had a continuing need to acquire the property to build a middle school.

In *Northwestern Lehigh School District*, this Court rejected the district's arguments and concluded that res judicata prohibited the district from filing a second petition seeking approval to condemn the same property. We reasoned as follows:

> **Clearly, the burden was on the [district] to provide evidence of alternative sites to the Board. The [district] chose not to avail [itself] of the opportunity to present such evidence at the first hearing. Therefore, we hold the Board committed no error in concluding that the**

---

[7] Act of June 30, 1981, P.L. 128, *as amended*, 3 P.S. §§901-915.

10

**[district's] failure to present evidence which could have been presented in the earlier proceeding was not a basis for an exception to the doctrine of res judicata**.

\*　　\*　　\*

[T]he [district's] argument that it did not have sufficient time to prepare for the hearing has no merit, since it chose the date on which to request the Board hearing. Therefore, any time constraint that it experienced was a result of its own doing.

\*　　\*　　\*

The persons, parties and the thing being sued for in this action are all identical to those in the first action. **The [district] is now seeking to condemn the identical parcel of land which it sought to condemn [in the first action]. Additionally, the purpose for the condemnation has not changed. Finally, there has been no change in the quality or capacity of the parties suing or being sued.** Clearly, all four elements of res judicata were satisfied here. **Therefore, we hold, as a matter of law, the Board properly dismissed the [district's] second petition on that basis**.

*Northwestern Lehigh School District*, 578 A.2d at 616-17 (emphasis added).

Akin to the district's opportunity and inability in *Northwestern Lehigh School District* to prove in the first action that no reasonable alternative existed to the condemnation, the District in this case had sufficient opportunity to conduct its due diligence and demonstrate that its decision to condemn the property was not excessive and was not the byproduct of bad faith or an abuse of discretion. Further, as in *Northwestern Lehigh School District*, there is no material change of circumstances present in this case that are sufficient to avoid application of res judicata.

Notably, the District does not cite any authority for the proposition that res judicata applies only where the first action was dismissed on the ground that the condemnor did not possess the power or right to condemn property under section

11

306(a)(3)(i) of the Code.[8, 9] In any event, the district's first attempt and failure to obtain authority for condemnation in *Northwestern Lehigh School District* concerned administrative approval and procedural matters, which prelude the district's actual exercise of its power or right to condemn. *See* 26 Pa.C.S. §207(a) ("Notwithstanding any provision of law to the contrary, approval by the [Agricultural Lands Condemnation Approval Board] shall be required prior to the exercise of eminent domain authority by any agency . . . . Approval shall be obtained in accordance with [the Law]."). Likewise, here, the District's exercise of deficient due diligence when determining to condemn Landowners' property in the first and second actions involved a process and procedure that were precursors to the District's actual exercise of its power or right to condemn. *See Westrick v. Approval of Bond of the Peoples Natural Gas Company*, 520 A.2d 963, 965-66 (Pa. Cmwlth. 1987) ("Condemnation presupposes considered judgment and the exercise of discretion prior to formal action by a condemnor . . . . Administrative decisions of a condemnor [concern] the amount, location, or type of estate condemned[.]"). Contrary to the District's argument, *Northwestern Lehigh School District* expressly applied res judicata to situations that did not involve a prior adjudication of a condemnor's right or power to condemn, and our holding in that case specifically encompassed prefatory, procedural mishaps like those committed by the District in the first and second actions. In addition, Section 517 of *Corpus Juris* lends further support to our decision in *Northwestern Lehigh*

---

[8] 26 Pa.C.S. §306(a)(3)(i) (stating that preliminary objections may be filed to a declaration of taking to challenge "[t]he power or right of the condemnor to appropriate the condemned property unless it has been previously adjudicated").

[9] This Court has consistently "held that objections to a condemnor's 'power and right' are limited to challenging the condemning authority's grant of power from the legislature through appropriate enabling statutes." *In re Condemnation of Real Estate by the Borough of Ashland, Schuylkill County*, 851 A.2d 992, 996 (Pa. Cmwlth. 2004).

*School District*, stating that res judicata is applicable to "all non-value issues in the condemnation proceeding, [including] such matters as . . . the necessity, quantity, or nature of the property required or taken [and] such matters as the sufficiency of the description." *Corpus Juris* §517.

Moreover, the fact that the District attempted to cure its own procedural flaws and lack of due diligence does not change the circumstances or operative factual basis underlying the taking so as to justify another attempt at condemnation. This is especially true considering that the District had tried to correct the deficiencies that the trial court previously found to have existed; the District's subsequent attempt to cure these deficiencies was rejected as factually and legally insufficient by the trial court; and the trial court's dismissal of the District's second declaration based on the District's continued inadequacies was affirmed by this Court in *Mercer II*. Put simply, both *Northwestern Lehigh School District* and *Corpus Juris* state that, in order for there to be changed circumstances, the circumstances must be material and substantive in nature, on an objective level, and not simply a failure on the part of the condemnor to prove that which it could have proved in a prior action.

Here, the trial court concluded that the District's second declaration suffered from many of the same flaws that it previously found tainted the first declaration. Although the District may have adduced evidence of a better quality and character in the proceedings regarding the second declaration, when compared to the proceedings with respect to the first declaration, the evidence was nonetheless insufficient; that is, two unsuccessful bites at the very same apple. Consequently, in litigating the second declaration, the District's continued inability to cure the deficiencies previously noted by the trial court was due to an evidentiary shortcoming on its part, and by no means can the failure to adduce sufficient evidence be deemed as

a change in the underlying factual basis for—or circumstances giving rise to—a condemnation. *See Northwestern Lehigh School District*, 578 A.2d at 615-16 (concluding that where the first application to condemn property was denied for lack of evidence demonstrating the absence of a "reasonable alternative," a second application based on a new "study of alternative sites" did not represent a material change of circumstances, but, rather, represented the applicant's "failure to present evidence which could have been presented in the earlier proceeding").

That said, this Court must acknowledge that the trial court found that the District's third declaration merely sought to condemn the same amount of land, from the same individuals, and for the same purpose as its second declaration. In these respects, the trial court's findings are well-supported by the record. *Compare* R.R. at 430a-55a, *with* R.R. at 648a-74a. In fact, based on their plain language, the second and third declarations are virtually duplicative, if not identical, and the second and third resolutions authorizing the takings are mirror images of each other. *See* R.R. at 430a-55a, 648a-74a. In discussing the changed circumstances exception to res judicata, a state intermediate appellate court held that changed circumstances were present, and res judicata did not bar a successive eminent domain action, when: the first declaration sought to condemn an excessive amount of land; a circuit court dismissed the declaration on that basis; and the second declaration sought to condemn only half of the amount of land that was sought in the first action. *See City of Chicago v. Midland Smelting Co.*, 896 N.E.2d 364, 382 (Ill. App. Ct. 1st Dist. 2008),[10] *accord Oakes*

---

[10] In pertinent part, the court stated:

> The first lawsuit against [the landowner] was brought pursuant to a city council ordinance which authorized the [c]ity to acquire approximately 25,000 square feet of land, or all of the [landowner's property]. After that action was dismissed as an excessive taking, the city council passed

*Municipal Airport Authority v. Wiese*, 265 N.W.2d 697, 701 (N.D. 1978) ("The first condemnation action [the municipal authority] commenced against [the landowner] sought 74.1 acres of land, whereas the subsequent condemnation action [sought] to acquire only 37.93 acres in fee, together with a clear zone easement in 9.18 acres. Although the second action involves the same land sought in the first condemnation action against [the landowner], the requested taking is only for approximately one-half of the acres sought in the first action. This substantial reduction in the acres sought is a changed circumstance . . . so as to preclude the application of the doctrine of *res judicata* from barring the second condemnation action."). In another case, a state court of appeals concluded that changed circumstances existed, and did not bar a second declaration of taking, where the first declaration sought to condemn property for commercial and business purposes and the second declaration sought to condemn the property for a public park. *See City of Charlotte v. Rousso*, 346 S.E.2d 693, 694 (N.C. Ct. App. 1986).[11] However, unlike those cases, in this matter, there is no reduction in

---

> a new ordinance which authorized the [c]ity to acquire only 12,500 square feet of land, or approximately half of the [landowner's property] . . . . [A]lthough the two actions involve the same piece of land, the requested taking in the second action is only for approximately half of the amount of land sought in the first action. Given that the initial action was dismissed as an excessive taking, this reduction in the amount of land sought is a changed circumstance[.]

*Midland Smelting Co.*, 896 N.E.2d at 382.

[11] The court explained:

> [T]his case is not based upon the same facts as the prior case and res judicata does not apply . . . . The first proceeding was based upon a plan to lease some of the condemned land "to private parties for use in retail business" . . . . The basis for this case is different. After the prior action was dismissed the [c]ity's governing body rescinded the resolution that it was based upon and adopted a new condemnation resolution . . . . A

the amount of land that the District desired to condemn in the second and third declarations, and the purposes of the taking, as stated in the second and the third declarations, remain the same.

Absent a change in circumstances, it is important to point out that the trial court found "that [the District's] third declaration of taking was a contrived attempt to overcome its loss of the appeal [in *Mercer II*] on the second declaration of taking." (R.R. at 1091a.) Again, this finding has ample support in the record as well as the factual and procedural history of this case. As one court put it, a "prior unsuccessful attempt to [condemn] property … should not bar the commencement of a subsequent action . . . providing the court is satisfied that the subsequent action was brought in good faith and there has been a change of circumstances such that the action is not merely an attempt to re[-]litigate identical issues based upon identical factors for consideration." *Oakes Municipal Airport Authority*, 265 N.W.2d at 701. Ultimately, the record demonstrates that the District filed the third declaration in a bad faith manner or simply as an attempt to re-litigate identical issues that were decided by the trial court in prior proceedings.

Therefore, we conclude the trial court correctly decided that no exception to the doctrine of res judicata applied, and that the District's third declaration was

---

judgment, even though in an action between the same parties, operates as an estoppel only as to the facts in existence when the judgment was rendered; it does not bar a re-litigation of the same issue when new facts occur that alter the legal rights of the parties in regard to the issue. Thus, the judgment in the former action bars the plaintiff [c]ity only from condemning defendants' land for commercial or business purposes[]; it does not bar it from condemning the land for the sole purpose of using it as a public park. . . . .

*Rousso*, 346 S.E.2d at 694 (internal citation omitted).

16

barred pursuant to well-settled principles of claim preclusion. In reaching our conclusion, we do not hold or suggest that the District is forever barred from filing another declaration in the future. At the same time, this Court expresses no view, and declines to issue an advisory opinion, as to when, if, or under what circumstances such a declaration would not be subject to the defense of res judicata.[12]

Accordingly, and for the above-stated reasons, we affirm.

_____
PATRICIA A. McCULLOUGH, Judge

---

[12] The District also asserts that the trial court, in addressing Landowners' motion for damages, used language indicating that it had "expressly reserved" to the District the right to file a third declaration of taking. (District's Br. at 33.) However, this argument is refuted by the record and merits no further discussion. In addition, the District contends that the trial court erred in failing to decide all of Landowners' preliminary objections at one time. Even if this was an error, it does not alter our conclusion that the District's third declaration of taking was barred by res judicata.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Condemnation by the Mercer Area   :
School District of Mercer County   :
for Acquisition of Land for   :
School Purposes in the Borough of   :
Mercer, Being the Lands of   :    No. 448 C.D. 2019
Kevin and Doreen Wright and   :
Glenn and Edith Krofcheck   :
  :
Appeal of: Mercer Area School   :
District   :

## _ORDER_

AND NOW, this 15th day of April, 2020, the March 22, 2019 order of the Court of Common Pleas of Mercer County is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge